## J. W. ANSLEY v. J. W. BAKER.

Our Probate Laws, for the settlement of the estates of deceased persons, assume to be a complete system, and, as such, to afford a mode of proceeding applicable to all cases. To introduce an executor *de son tort*, with his rights and liabilities, would mar the intended symetry, and increase the perplexity of the system.

Where the plaintiff sued the sole heir, on a promissory note of the intestate, alleging that it was the only debt against the estate, and that the heir had taken possession of all the property, the Court said : It will be observed that there is no ground alleged, in this case, sufficient, in law, to require a departure from the ordinary mode of enforcing claims against an estate, by an administration. It is not averred that the plaintiff was impeded or prevented from administering, or from pursuing his ordinary remedy. No doubt there might be cases, in which the possessor of the property of an estate might be held responsible for its debts,

to the extent, at least, of the assets in his hands ; but this could only be, where he was otherwise remediless, without default in himself.

Under our Probate Laws, an estate of a deceased person vests immediately in the heirs, subject to administration only ; consequently the heir, who takes possession, is not liable in the nature of an executor *de son tort*, at the suit of a creditor, in the District Court. The proper remedy is administration in the Probate Court.

Error from Panola.   Suit by the plaintiff in error against the defendant in error on a note executed by Elizabeth A. Ansley, 12th January, 1845, to the plaintiff, for $280, due one day after date.   The petition alleged that the said Elizabeth married the defendant November 10th, 1845, in Louisiana, and afterwards moved to Texas ; that she died in July, 1846, having separate estate, to-wit : two slaves of the value of $1400 ; that she left an infant child who died shortly afterwards ; that the defendant took possession of said slaves, at the death of said Elizabeth, and kept and used them as his own, and so continued to do ; that there were no debts against the said Elizabeth except this note ; that it was presented to the defendant, as executor, duly authenticated, and by him rejected.   The facts of the said Elizabeth's having made a will, defendant's appointment as executor, by the will and by the County Court, were not averred ; but the fact of his using and enjoying the property was relied on as the foundation of defendant's liability. The defendant excepted to the petition, on the ground that the District Court had no jurisdiction, and that the proper remedy of the plaintiff was by administration in the County Court. Exceptions sustained and suit dismissed.

*W. R. Poag,* for plaintiff in error.   That the defendant is not to be sued as executor *de son tort,* is absurd and preposterous.   Though, perhaps, he had a right to take out letters of administration on said estate, as the principal and only creditor, the law cannot say that he should do it, especially so when some third party, by his improper, unjust and illegal interfer-

ence, has laid himself liable to us by actual conversion of the only property of which our debt could be made. The law reports are replete with cases of this class of trustees, always found on the defendant's side of every case. (*Vide* Toler, 27, 28 ; Id. 474 ; Bouvier, Law Dic., 1st Vol., cases there cited, title Executor *de son tort*, &c.)

*O. M. Roberts*, for defendant in error. I. An executor *de son tort* is one who takes upon himself the office of executor by intrusion. (1 Williams on Executors, p. 210, note a.)

From his acts strangers have a right to conclude, and act on the conclusion, that he has a will of the deceased, wherein he is appointed executor, but has not yet proved it. (Id. 216.)

1st. It is suggested that no such conclusion can be entertained here, because the executor must, in thirty days, apply for probate of will ; take the oath, and, unless it be dispensed with, give the bond as executor, the same as administrator. (See Statutes of 1840 and up to 1848.) There can be no such thing as administrator in his own wrong. (Id. 217, note r.) Executor *de son tort* is unknown in Ohio. (See note page 27, 4th Bacon.)

2nd. This mode of proceeding would be variant from our system of administering and settling estates : in the judgment, in the sale of the property, in the expenses of administration, and'in preferences and payment of creditors and admission of claims. (See Hart. Dig. p. 351, Art. 1099, 1095, 1096, 1097.)

3rd. This mode of proceeding would defeat the ample original jurisdiction of the County Court, and transfer it in probate matters to the District Court ; without the same having been prescribed by law, (see Constitution, Sec. 15, Art. IV, and Law of 1846, Hart. Dig. p. 347,) and without the organization of the District Court being suited to the full and complete transaction of such business, in the manner the Legislature have indicated by the probate laws.

4th. It is granted that if there were any facts in this case,

which impeded or hindered the plaintiff, in the pursuit of his rights in the Probate Court, by the ordinary remedies of administration, equity would hold defendant bound as trustee, for the amount of funds in his hands; but no such facts are pretended to be urged by plaintiff, further than the mere convenience of plaintiff.

5th. The whole doctrine of executor *de son tort* is founded on a fiction of the Common Law, which no public policy here requires us to perpetuate, to-wit: a man shall be held to be executor (although in truth he is not) when he intermeddles with the property of an estate.

II. The second question, upon the state of facts presented, is, do the facts in the petition show defendant to be liable as executor *de son tort?*

On the death of his wife, in 1846, the property descended to her infant child, and after the child's death (before suit brought) to defendant; so that the property was possessed all the time in right of his child, as natural guardian, or in his own right. His possession was rightful in both capacities, which contradicts the idea of his being executor *de son tort.* That implies an unlawful, tortious or wrongful possession, use or disposition of the property of an estate. (See 1 Williams, 209, 210.) All the acts there specified are wrongful, under the English jurisprudence. (See also Bouvier's Law Dic. 1 vol. p. 497, as to "unlawful.")

It is different, however, where the property is retained or possessed for safe keeping, or under claim of right, or even color of right. (See 1 Williams, 213, 215, 216, and note x 216; 4 Bacon, note b. 28; 5 Ala. R. N. S. 35, Densler v. Edwards.)

HEMPHILL, CH. J. The question in this cause, is, whether an heir, who takes the estate into possession, is liable for its debts, before administration; for there is no question, that after administration and partition, he may be held liable to the extent of his distributive share, for debts not barred by limitation. (Hart. Dig. Art. 1197.) Under the laws of Spain,

his acceptance of the estate would have created a liability for the debts; and under the Common Law, his intermeddling with the personal goods, would make him liable as executor *de son tort*. This liability would not be incurred by acts which might be attributable to mere kindness and charity, but would arise upon acts characteristic of the office of an executor, and which might be regarded as *indicia* that the person inter-- fering was the representative of the deceased. (1 Williams on Ex'ors. p. 210, 215.)

Can there exist, under our Statute, any such officer as the Common Law Executor in his own wrong, or any such lia- bility as that incurred by him, especially in a case where the person, sought to be charged, is an heir of the estate? It will be perceived, at a glance, that there are essential distinctions between an estate at Common Law and that under the Statute, between the modes of administration, respectively, and the offices of executor and administrator. As to administration, (unless an estate be brought by creditor's bill into Equity,) the mode adopted at Common Law, for the collection of debts, is very diverse from that prescribed by our Statute. Judgments, whether recovered against the deceased in his lifetime, or against his representative after his death, can be enforced against his estate by execution; the prompt creditor getting the benefit of his diligence; the first judgment, though rendered after the death of the deceased, having priority over those sub- sequent—the class of debts being the same—and perhaps ab- sorbing the whole estate. All these debts are suable in the District Court, without any reference to a Probate Court. The lawful executor and the executor in his own wrong are sued in the same tribunals, and judgment against them is enforced in the same mode, viz: by execution against the goods of the tes- tator, though an executor *de son tort* would be liable out of his own goods, if in his hands there were not sufficient of the testator. But by our Statute, suits cannot be prosecuted on an ordinary claim for money in the District Court, against an administrator, unless on a previous rejection of the claim by

the administrator or Chief Justice ; and judgments, when rendered, cannot be enforced by execution, but must be certified to the County Court, to be paid in the due course of administration.

Now, a judgment against a defendant as executor *de son tort*, could not be thus certified, the County Court knowing nothing of executors by construction, and the judgment must be enforced, if at all, by execution, which is a mode repugnant to that specified in the law regulating the estates of deceased persons, and by which the estate might be sacrificed, to the prejudice of other creditors, and of the distributees.

The Statute vests very ample jurisdiction in the County Court, over the estates of deceased persons, especially in relation to debts, and subsequent partition. The intention was, obviously, to form a complete system ; to provide for all contingencies ; to adjust a mode of settlement sufficiently comprehensive to embrace all estates, with capacities to extend justice to all who would apply, under its provisions ; to have all the debts and assets before the County Court, that none might suffer, who were entitled under the law, and, at the same time, to form a system so intelligible to a common understanding, as to be susceptible of administration by men of plain common sense, although they might be new in their offices, being liable to be changed at every biennial election. To introduce an executor *de son tort*, with his rights and liabilities, would mar the intended symetry, and increase the perplexity of the system. To permit the estate to be charged and its assets applied in another mode and by a different tribunal, from that prescribed by law, would be at war with the policy of the Statute, and would produce discord and confusion where harmony might and should exist.

It will be observed that there is no ground alleged, in this case, sufficient in law to require a departure from the ordinary mode of enforcing claims against an estate by administration. It is not averred that the plaintiff was impeded or prevented from administering, or from pursuing his ordinary remedy. No

doubt there might be cases, in which the possessor of the property of an estate might be held responsible for its debts, to the extent, at least, of the assets in his hands; but this could only be, where he was otherwise remediless, without default in himself. But, apart from these considerations, it is extremely doubtful, whether the mere fact of taking possession of an estate, by an heir, would, under our Statute, be permitted to convert him into an executor *de son tort*, and subject him to liabilities as such. The Statute declares, in effect, that the estate shall, immediately on the death, vest in the heirs, testate or intestate, as the case may be. To take possession of property vested by operation of law, cannot be unlawful, nor can it create liabilities not specially attached to the act by law. At Common Law, the estate in the personal goods was in abeyance until the grant of administration, but by the Statute, the whole estate vests immediately in the heirs, subject to the payment of debts, as declared by Statute. But it is not provided that the heirs, as such, can be compelled to discharge those debts; nor are they authorized to employ the estate for such purpose, the Statute, in the same connection declaring that the administrator shall have a right to the possession of the estate, as it existed at the death of the deceased, though if debts were fairly paid, allowance would no doubt be made for such payments. (Hart. Dig. Art. 1221.) Possession, then by an heir, does not subject him to liability. He holds the property, with the incumbrance, but he cannot be required to relieve the estate of the burthen. What further provision, if any, may be necessary to quicken the diligence of an heir, who is holding and enjoying the property, without taking any steps to discharge the liabilities, it is not the province of this Court to suggest. In a case such as this, where the husband is enjoying the estate of a deceased wife, subject to a trifling liability, he should either administer or pay the debt, or request some one to administer in his stead. A stranger, of any delicacy of feeling, would hesitate long before he would take the step of administration, and the defendant, in such cases, should not be permitted to

take advantage of the good feelings of his creditors, to his own profit and their loss.   But such amendments as may be necessary are left to the wisdom of the Legislature.

Under the law, as it now exists, we see no legal ground why the plaintiff did not pursue the ordinary remedy by administration, and consequently he is not entitled to the relief in the mode sought in his petition.

Judgment affirmed.