[No. 3524.]

L. P. Fairy *v.* The State.

1.  Theft.— A part owner of property cannot be convicted for theft of it, unless the person from whom he took it was entitled to the exclusive possession of it at the time of the taking. (Penal Code, art. 731.)
2.  Same — Part Owner — Charge of the Court — Case Stated.— Appellant was convicted of theft of property alleged to belong to one F., who, as the proof showed, had bought it from a half-brother of appellant.   The property had previously belonged to a brother of the appellant who had died intestate, unmarried, and on whose estate there was no administration.   There was no proof that the appellant had authorized the sale made by his half-brother, or had parted with his inherited interest in the property; but there was proof that the proceeds of the sale were applied to the payment of the funeral expenses of the deceased former owner of the property.   In substance, the charge of the trial court authorized the jury to convict the appellant if (finding the other inculpatory facts) they believed beyond a reasonable doubt that the proceeds of the sale were applied to the expenses of the last illness and funeral of the deceased former owner.   *Held,* that the charge was essentially erroneous because the law made the appellant a part owner of the property, and his ownership could not be divested in the man-

ner indicated, and his right to the possession of it was as good as that of the alleged owner, or that of the latter's vendor.

3. FACT CASE.— See evidence *held* insufficient to sustain a conviction for theft, because it fails to implicate the accused in the taking of the property alleged to have been stolen.

APPEAL from the District Court of Falls. Tried below before the Hon. B. W. Rimes.

This conviction was for the theft of a mare, a saddle and bridle, and an overcoat, the property in part of Charles O. Faulkenhagen, and in part of George Faulkenhagen, in Falls county, Texas, on the 23d day of November, 1883. A term of five years in the penitentiary was the punishment assessed by the jury.

C. O. Faulkenhagen was the first witness for the State. He testified that about dusk on Friday, November 23, 1883, he left Marlin, Texas, riding the mare in question, to attend a party at the house of Mr. Henry Sanders, about five miles distant. He used the saddle and bridle charged to have been stolen at the same time, and had his gray overcoat, also charged to have been stolen, tied behind the saddle. Arriving at the house of Sanders, the witness tied the mare, leaving the saddle, bridle and overcoat on her, and went in. Within thirty minutes he went out again to see that the mare was still secure, and discovered that she was gone, together with the bridle, saddle and overcoat. He saw a loose horse near by, which he tied to a wagon. Four days later the mare was returned to the witness by M. J. Fairy, a half-brother to the defendant. Several days later the witness recovered his overcoat and saddle through Mr. Jack Owens.

The mare and bridle and saddle stolen from the witness were originally the property of William Fairy, deceased, a full brother of the defendant. William Fairy died intestate and unmarried. M. J. Fairy was a half-brother to the defendant and William Fairy, deceased. The said M. J. Fairy sold the mare, saddle and bridle to Geo. Faulkenhagen, after the decease of William Fairy, for $30, which sum was expended in defraying the funeral expenses of the said William Fairy, deceased. At the time of the theft the witness was holding the mare, saddle and bridle for his brother George Faulkenhagen. The mare was worth about forty dollars, the saddle about eighteen, and the bridle about one dollar. The overcoat, which was the property of the witness, was worth about $10. Witness did not see the defendant about the premises of Sanders on the day of the theft. He was not at the party at Sanders's house that

night. Witness did not consent that defendant or any other person should take the property described. All of this occurred in Falls county, Texas, about the time alleged in the indictment.

George Faulkenhagen was the next witness for the State. He testified that, in October, 1883, he lived in Cherokee county, Texas. When he left Falls county, Texas, which was prior to the time of the alleged theft, he left the mare, saddle and bridle in the possession of C. O. Faulkenhagen. The said mare, saddle and bridle were the property of the witness, and were taken from the possession of C. O. Faulkenhagen, if taken at all, without the consent of the witness. Witness purchased the said mare, saddle and bridle from M. J. Fairy, and knew as a fact, when he so purchased them, that they belonged to William Fairy at the time of his death. M. J. Fairy was a half-brother to the defendant and William Fairy, deceased. William Fairy and the defendant were full brothers. After the death of William Fairy, this mare, saddle and bridle were sold by M. J. Fairy at a public sale at his house, and were bid in by said M. J. Fairy at $30, but witness could not say that said M. J. Fairy ever paid a cent on such purchase. There was never any administration on the estate of William Fairy, deceased. He died intestate and unmarried. The witness did not know whether or not the said sale was advertised, nor did he know whether or not the defendant was present at the said sale. Witness could not say that the defendant knew or or did not know that the said mare, saddle and bridle were to be sold. Witness bought the mare, saddle and bridle. He paid $30 in money for the mare, but did not remember what he paid for the saddle and bridle. Witness was not at home in November, 1883, when the property described was taken.

A. J. Owens was the next witness for the State. He testified that he lived on Big creek in Falls county, Texas. He accompanied M. J. Fairy in his search for the mare, saddle, bridle and overcoat, after the same were taken from the possession of C. O. Faulkenhagen. They went first in the direction of Waco, but could find no trace of the missing animal, nor hear of it. Continuing their search, they found the defendant and the overcoat at the house of his brother-in-law, J. B. Bennett, near Osage, in Coryell county. The overcoat was a tight-collared garment of peculiar make, and unlike any other ever seen in that neighborhood by the witness. Bennett was wearing the overcoat when it was found. The defendant was under arrest when witness arrived. M. J. Fairy took possession of the overcoat and gave it to witness, who took it back to Falls county and delivered it to C. O. Faulkenhagen. Witness knew the coat to

be the property of the said C. O. Faulkenhagen. The saddle and bridle were found at the house of a man whose name was unknown to witness, at Crawford in McLennan county. Witness knew, however, that the man from whom it was recovered was not Mr. Ophe. Witness was not with the party that found the mare, and did not know of his own knowledge where she was found. The witness could not say that the defendant had ever been to Crawford. Witness did not know the distance from Waco to Crawford, but he and his party were half a day in traversing the distance. He did not know the distance between Crawford and Osage. The witness had not seen the defendant in the Henry Sanders neighborhood for four or five days prior to the alleged theft of the property. The mare, saddle and bridle were owned by William Fairy, the deceased brother of the defendant, and the half-brother of M. J. Fairy. Witness was well acquainted with the reputation of the defendant in his neighborhood. It was good, or at least witness had never heard it questioned during the five years of his and defendant's residence in the same neighborhood. Witness, on recovering the saddle, shipped it to Faulkenhagen at Marlin. Defendant, when he left Falls county, and when arrested, wore a light-colored hat.

Buck Ophe was the next witness for the State. He testified that he lived near Crawford in McLennan county, Texas. The defendant passed witness's house some time late in 1883, on a Saturday, but what day of what month the witness could not now say. He was then a stranger to the witness. Defendant, on that occasion, was riding a chestnut sorrel horse. He stopped at witness's house and got a drink of water. In the course of the conversation that ensued, the defendant told the witness that he was from Falls county, and that he was going to Osage, the direction and distance to which point he asked of witness. This was about noon on Saturday. Witness saw him at Crawford, with Owens and others, on the Monday following. He was then under arrest. Witness did not know what had become of the horse, saddle and bridle he saw in defendant's possession. From Waco to Crawford the distance is twenty miles, and it is eight miles from Crawford to Osage.

William Carpenter, colored, testified, for the State, that on one Saturday in the fall of 1883, he and one Henry Clay Davis started in company to Waco, from the neighborhood in which they lived, ten miles distant from Waco, in the direction of Crawford. When about four miles from Waco they met a young man riding a small bay mare. The man was about nineteen years old, had a light complexion, light mustache and hair, and wore a light-colored hat

and a gray overcoat. The witness saw that man but once, and did not know that he would recognize him again. He could not recognize him among the men present at this trial.

When witness and Davis met the man described, the man proposed to trade the mare he was riding for the animal that the witness was then riding. Witness declined to trade, and the defendant then proposed to trade with Davis for his roan mare and $5 in boot. Davis and the man finally traded, the man receiving of Davis $1.75 in boot. The mare which Davis got in the trade with the man, he afterwards, on the same day, in Waco, traded for a pony with one Pritchett. The man with whom Davis traded for the bay mare said that he was from Falls county. The witness afterwards, at the examining trial of the defendant, saw the same mare which the man they met on the road near Waco traded to Davis.

Henry Clay Davis, colored, was the next witness for the State. He testified that in November, 1883, he lived on South Bosque, in McLennan county, Texas. *En route* to Waco on Saturday, the 24th day of that month, he met a young man apparently eighteen or nineteen years old, of light complexion, hair and mustache, and wearing a light-colored hat and a gray overcoat. He was riding a bay pony mare. For this mare the witness traded, giving the man in return his roan " stocking legged" pony, and $1.75 in money. They did not trade saddles and bridles. Witness kept the mare about three hours and then sold her to a Mr. Pritchett, in Waco. Witness next saw the mare at the examining trial of defendant in January, 1884. He could not then, nor could he now, identify the defendant on trial as the man with whom he traded for the mare. Witness recovered his pony from the range some three or four weeks after the trade.

Alex. Frazier, a justice of the peace in and for Falls county, was the next witness for the State. He testified that he had known the defendant for several years, and knew his general reputation for honesty. It was not good. He had been accused of hog stealing. On cross-examination the witness stated that he could recall the name of no person whom he had ever heard question the defendant's honesty, except Mr. A. J. Owens.

C. O. Faulkenhagen, recalled by the State, testified that M. J. Fairy brought the mare back to him after she was stolen, and witness rode the mare to the examining trial, which was held before Justice Frazier. He did not ride her to the trial on *habeas corpus*, which was held before Judge Stuart. He did not see the mare in

the possession of the defendant at any time after she was stolen. Witness knew that the defendant was in the neighborhood on Friday, the day of the theft.

Doctor J. C. Shaw was the first witness for the defense. He testified that he knew the defendant, and he knew William Fairy prior to his decease. He remembered the last illness of the deceased, and attended him upon the call of the defendant. Witness's bill for services as the physician in attendance upon the deceased was $18, and for the payment of that bill the witness looked to the defendant, and called on him for it. Part of that bill, $6, was paid by the defendant during his brother's sickness, and $5 was afterwards paid by M. J. Fairy. The balance on that bill was still due. The money was actually paid to the witness by M. J. Fairy, but the defendant was the man the witness asked for the money, and he, defendant, got the money from some one who owed William Fairy, and sent it to witness by M. J. Fairy. Witness still looked to the defendant, and not to M. J. Fairy, for the unpaid balance of the bill, because he, defendant, was the man who had promised to pay the same. Defendant has a light complexion and dark hair, and was twenty-three years of age.

William Kimbrough was the next witness for the defense. He testified that he had known the defendant for the last seven years. He also knew the mare for the theft of which defendant was now on trial. William Fairy purchased the mare from John Parsons, and owned her at the time of his death. William Fairy and defendant were full brothers to each other, and half-brothers to M. J. Fairy. Witness had never heard the defendant's character for honesty impugned. Defendant had lived at witness's house a portion of the time during the last five years. He had a light complexion and dark hair.

The motion for new trial raises the questions discussed in the opinion.

*Oltorf & Hanlan*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Willson, Judge. William Fairy owned a mare, saddle and bridle at the time of his death. He died intestate, leaving as his only heirs his brother, the defendant, and M. J. Fairy, a half-brother. M. J. Fairy, the half-brother, took possession of said property without administration upon the estate of the deceased, and sold the same, one Faulkenhagen becoming the purchaser thereof. This

property was stolen from Faulkenhagen, and defendant stands convicted of the theft of it, and of an overcoat taken at the same time.

Upon the death of William Fairy, the owner of the mare, saddle and bridle, the title to said property vested in his legal heirs, to wit, the defendant and M. J. Fairy; the defendant taking a three-fourths interest therein, and M. J. Fairy the remaining one-fourth interest. (Rev. Stats., arts. 1645–1648.) The title to this property passed to and vested in the heirs immediately upon the death of the intestate, subject to administration, and such title could not be divested out of them except by their consent, or by due course of law. (*Ansley* v. *Baker*, 14 Texas, 607; Rev. Stats., art. 1817.)

It is very clear from the evidence that, at the time the mare, saddle and bridle were taken from the supposed owner, Faulkenhagen, the defendant was a part-owner thereof, because his interest therein had not been divested by the unauthorized sale of the same made by M. J. Fairy, who could not pass title to more than his own interest in the property.

Our statute provides that, "If the person accused of the theft be part-owner of the property, the taking does not come within the definition of theft, unless the person from whom it is taken be wholly entitled to the possession at the time." (Penal Code, art. 731.) In this case Faulkenhagen was not wholly entitled to the possession of the property. The defendant had as good, if not a better, right to the possession than he had. The fact that this property was sold by M. J. Fairy to pay the funeral expenses and the expenses of the last sickness of the deceased intestate, does not legalize such sale, or give to it any greater validity than if the sale had been made for any other purpose, and the charge of the court upon this point was erroneous. Conceding, therefore, that the defendant took the mare, saddle and bridle, being a part-owner thereof, the taking did not constitute theft.

But the evidence does not show, with that degree of cogency which would warrant his conviction, that he took any of the property. A person supposed to be the defendant was seen in possession of the mare soon after she was taken from Faulkenhagen, but the evidence fails to identify the defendant as the person. No witness testified to seeing defendant in possession of any of the property. The overcoat was found in the possession of one Bennett, at whose house the defendant was staying, but it is not shown that Bennett received it from the defendant.

In our opinion the evidence is insufficient to sustain the conviction, even if the defendant had not been a part-owner of a portion

of the property charged to have been stolen. He was not a part-owner of the overcoat, and might legally have been convicted of the theft of that, if the evidence had proved that he stole it, but the evidence wholly fails to connect him with the theft of it.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered June 3, 1885.]