Nannie E. Blinn et al. v. W. J. McDonald.

No. 565. Decided June 20, 1898; ·April 29, 1899.

**1. Claims Against Estates—Liability of Heirs—Not Personal.**

Heirs, devisees, or legatees, who receive property belonging to an estate against which unpaid claims exist, do not thereby become personally liable to the claimants for the value of property so received, the remedy being to enforce a lien against the property in their hands. (Pp. 606-611.)

**2. Same—Statutes Construed.**

Probate law of 1848, sections 87, 88, 112; probate law of 1870, section 287; Revised Statutes, article 1869, as to liability of heirs, etc., for debts of their ancestor, construed. (Pp. 607-613.)

**3. Same—Pleading—Lien or Personal Liability.**

A petition by a creditor of an estate to recover against heirs, etc., who have re-ceived property of decedent should show what specific property came into the hands of each, the plaintiff's right being to enforce a lien thereon, and not to have a personal judgment. (P. 606.)

**4. Cases Overruled and Distinguished.**

Mayes v. Jones, 62 Texas, 365, and Kauffman v. Wooters, 79 Texas, 205, overruled. Webster v. Willis, 56 Texas, 468; McCampbell v. Henderson, 50 Texas, 601; Low v. Felton, 84 Texas, 378, distinguished. (Pp. 612, 613.)

ERROR to the Court of Civil Appeals for the First District, in an appeal from Marion County.

McDonald sued Blinn and others and had judgment, from which they appealed and on affirmance obtained writ of error from the Supreme Court.

*Dickson & Moroney*, for plaintiffs in error.

*H. D. McDonald*, for defendant in error.

DENMAN, ASSOCIATE JUSTICE.—This suit was brought by W. J. McDonald against the heirs, devisees, and legatees of B. H. Epperson, in the District Court of Marion County, Texas. The petition, as far as it relates to the questions we will discuss, alleged substantially, that in 1878 B. H. Epperson died testate, and his will being duly probated within twelve months thereafter by the County Court of Marion County, persons named as executors thereof qualified as such; that prior to 1888 such executors were removed and an administrator appointed by said court; that on the 16th day of January, 1888, plaintiff obtained in the District Court a judgment against such administrator for $1519.89 and costs, which was ordered to be paid in due course of administration; that said judgment, on 25th of January, 1888, having been duly filed in said estate, was allowed, approved, and classified by the county judge and duly entered upon the claim docket as an established claim in favor of plaintiff against said estate; that at the August term, 1888, of the said County Court said administrator was removed, and at the August term, 1889, said administration was by order of said court closed; that said judgment is wholly due and unpaid; that defendants as heirs, devisees, and legatees of said B. H. Epperson "have since his death received as such a large amount of property, to wit, money and lands, which belonged to said B. H. Epperson at the time of his death, the lands being situated in Hardeman, Cottle, Foard, Clay, and many other counties in Texas, all of which property was and is liable for the debts of the said B. H. Epperson, and that such property is of the value of $50,000; that the entire subsisting indebtedness against the said B. H. Epperson's estate, including affiant's claim, does not exceed $5000, and that the value of the property and assets so received by each one of said Epperson's heirs, devisees, and legatees who are hereinafter named, and which prop-

erty and assets said heirs, devisees, and legatees and each of them still has on hand in his or her possession exceeds said sum of $5000." The petition, after stating other matters not necessary to mention here, closes with a prayer for judgment for the debt against defendants and for general relief.

Defendants excepted to the petition on the ground that it did not show what property of the estate of Epperson had come into the custody and possession of each of the defendants.

The trial court having overruled this exception and rendered judgment on the hearing against each of the defendants for the full amount of said claim against the estate, Nannie E. Blinn and some of the other defendants appealed from such judgment to the Court of Civil Appeals, assigning as error the action of the trial court in overruling such exception, and the Court of Civil Appeals having affirmed the judgment, they have brought the cause to this court upon writ of error complaining that the Court of Civil Appeals erred in not sustaining said assignment.

If the creditor has only the right under the law to subject the property the heir, devisee, or legatee received from his debtor Epperson to the payment of his claim, the petition is clearly defective in not setting forth the property received by each so that it may be by proper decree subjected. The question to be determined then is, has the creditor a right to personal judgment against the heir, devisee, or legatee, or has he merely the right as against him to reach the property received by him from the debtor and subject it to the claim.

Under the civil law the acceptance of the succession by the heirs rendered them liable for the ancestor's debts, and in Louisiana the heir has the right to so qualify his acceptance that he may avoid personal liability by abandoning the effects so received to the ancestor's creditors. Montgomery v. Culton, 18 Texas, 749; Succession of Murray, 41 La. Ann., 1112. It is evident that under such a system it was hazardous for the heir to accept, since the ancestor's debts might absorb not only the property so received but also the individual estate of the heir.

Under the common law the heir took the lands discharged of all debts of the ancestor except specialties in which he had been specially bound, his liability in such case being on the contract, by which the ancestor was authorized to bind him personally to the extent of the value of the lands descended, so long as they remained in his possession, but there was no lien on the lands, nor personal liability on his part after he had conveyed them (Investment Co. v. Smart, L. R., 10 Ch. App. Cases, 577), and the devisee took the lands free from all debts of the ancestor (Sauer v. Griffin, 67 Missouri, 654; 3 Williams on Executors, chapter 11), while the executor or administrator took the property to which he was entitled under the law subject to the payment of the decedent's debts.

Thus under the civil law great injustice might be done the heir by absorbing both the ancestor's and his own property in the payment of

the ancestor's debts, and under the common law a like injustice might result to the creditor by allowing the heir to take valuable lands free of debts where he had not been bound by any specialty, or, even if he had, to evade his liability thereon by a sale of the lands before suit or by allowing the ancestor to practically defeat even specialty creditors by devising his lands.

In order to remedy some of these evils statutes were enacted in England at an early day imposing upon the devisee a like liability to that resting upon the heir and making both liable, not only while they retained the property, but for its value in case they sold same. See statute set out in Williams on Executors, vol. 3, chap. 2. But under the common law thus amended by statute the ancestor's debts, even by specialty, were not charged as a lien on the lands, and the heir or devisee could prevent the creditor from subjecting them by transferring to a bona fide purchaser before suit. Spackman v. Timbrell, 11 Eng. Ch. Rep., 424.

From this general statement of the condition of the civil and common law modified by English statutes, it may be seen that it was advisable when our Legislature came to enact our probate law in 1848 to make radical departures from both in order to do equal justice to creditors on the one side, and heirs, devisees, and legatees on the other.

Therefore they provided, "that when a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immdiately in his heirs at law; but all of such estate, whether devised or bequeathed, or not, except such as may be exempted by law from the payment of debts, shall still be liable and subject, in their hands, to the payment of the debts of such testator; and whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law; but, with the exceptions aforesaid, shall still be liable and subject, in their hands, to the payment of the debts of the intestate. But upon the issuance of letters testamentary or of administration, on any such estate, the executor or administrator shall have a right to the possession of the estate, as it existed at the death of the testator or intestate, with the exception aforesaid; and it shall be his duty to recover possession of and hold such estate in trust, to be disposed of under the provisions of this act." Sec. 112, Act approved March 20, 1848, p. 277. It will be observed that this statute provides (1) that upon the death of a person the title to all his property shall immediately vest in the heirs, devisees, and legatees, as the case may be; (2) that it "shall still be liable and subject in their hands to the payment of the debts of" the decedent, thereby fixing a lien upon same to secure the payment of such debts *so long as it remains in their hands,* but not imposing any personal liability therefor and not attempting to follow it into the hands of bona fide purchasers; and (3) that upon the issuance of letters testamentary the executor or administrator shall take possession of the property to be administered as provided by law. Other portions

of the same act make careful provision for the taking charge of and administration of the estate by the executor or administrator, whereby the property is to be (1) applied to the various classes of claims, and (2) the remainder is to be delivered to the heirs, devisees, and legatees.   Under the well settled construction of these provisions, the heirs, devisees, and legatees can not make such a disposition of any part of the estate during the period in which it is subject to administration that will defeat the subjection thereof to the claims of creditors through such administration (Cooper v. Loughlin, 75 Texas, 524; Templeton v. Ferguson, 89 Texas, 47), and the creditors can not as a general rule subject the property to their claims during such period in any other way than through such administration.   Graham v. Vining, 1 Texas, 639; Graham v. Vining, 2 Texas, 433; Robertson v. Paul, 16 Texas, 474; Ansley v. Baker, 14 Texas, 607; Cunningham v. Taylor, 20 Texas, 126; Green v. Rugely, 23 Texas, 539.   Thus under the broad scope and just intendment of said section 112, when read in connection with the provisions above referred to, the title to the property vests immediately in the heir, devisee, or legatee, and he may at once accept and take possession thereof as such without subjecting himself to the liability imposed by the civil law of paying the debts of the ancestor or to the liability of an executor de son tort under the common law (Ansley v. Baker, supra); but the property comes into his hands charged with the statutory lien in favor of the creditors of the decedent, and he must yield such possession to the duly appointed executor or administrator, who is the statutory trustee to hold and dispose of the same among creditors, heirs, etc., as they may be entitled under the law, and all persons dealing with the heir, devisee, or legatee are charged with notice of the fact that such trustee may within a given time be appointed, and of his powers and duties, and therefore can not during such time be a bona fide purchaser or acquire any rights from or under them which will prevent the execution of such trust.   Cooper v. Loughlin, 75 Texas, 524.   There is nothing in the language of the provisions above referred to indicating a legislative intent either to relieve the property that may be returned to the heir, devisee, or legatee by such trustee from the statutory lien aforesaid as to debts that may still be unsatisfied, or to charge such heir, devisee, or legatee personally therewith.   But there is an intent on the face of the statute above quoted that the property thus in the hands of the heir, devisee, or legatee, and not any longer subject to be taken by the statutory trustee, may be passed free of such lien to a bona fide purchaser, for the statute does not undertake to extend the lien any longer than the property is "in their hands."   In legal contemplation it would still be "in their hands" if the transfer were fraudulent in law, but would not be if transferred to a bona fide purchaser.   The wisdom of the statute in not extending the lien any longer is apparent, for it would unduly cloud titles to allow the obligations of the ancestor which might not accrue for years, as in cases of breach of warranty, to follow the property into the hands of bona fide purchasers from the heirs, devisees,

and legatees. The heir, devisee, or legatee would doubtless be liable to the creditor for the injury done him in defeating his lien by thus disposing of the security. Boothe v. Fiest, 80 Texas, 141; Zapp v. Johnson & Dick, 87 Texas, 641.

From what we have said it results that if said section 112 of the Act of 1848 is to govern this case the demurrer should have been sustained. This brings us to note some other provisions of said act and the course of legislation since, as well as some of the decisions of this court. Said Act of 1848, p. 265, also contained the following:

"Sec. 87. That at any time after the first term of the court, after the expiration of twelve months from the original grant of letters testamentary or of administration, the heirs, devisees, or legatees of the estate, or any of them, may, by their complaint in writing, filed in the county court, cause the executor or administrator, and the heirs, devisees, or legatees of the estate, to be cited to appear at a regular term of the court, and show cause why a partition and distribution should not be made among the heirs, devisees, or legatees of the residue of the estate, if any there be, after retaining in the hands of the executor or administrator a sufficient portion thereof to pay all debts of every kind against the estate that have been allowed and approved, or established by suit, or that have been rejected by the executor or administrator, or not approved by the chief justice, and may yet be established. And if it shall appear to the chief justice, after the service of such citation that there is any such residue of the estate, he shall order it to be so partitioned and distributed.

"Sec. 88. That no claim for money against his testator or intestate shall be allowed by an executor or administrator, nor shall any suit be instituted against him on any such claim after an order for partition and distribution has been made as provided for in the previous section of this act; but the holder of any such claim not barred by the laws of limitation shall have his action thereon against the heirs, devisees, or legatees of the estate; but they shall not be bound beyond the value of the property they may receive in such partition and distribution."

It will be observed that said section 87 provides for a return to the heirs, devisees, or legatees of what may be left of the estate after the statutory trustee shall have executed his trust, or so nearly so that it may be reasonably foreseen how much it will be necessary for him to retain to pay certain unsatisfied claims, and that, under our views above announced, in the absence of any other provision, it would come to them charged with the original lien for all such claims against the estate as had not been satisfied by such trustee. Said section 88, however, goes further and imposes upon the heirs, devisees, and legatees a personal liability to the extent of the value of the property received, and under the equity of this statute they have been held personally liable for a claim duly acknowledged and approved but unpaid at the time the estate was closed, and the heir, as in the case before us, received the property

from the administrator without any order of distribution. Montgomery v. Nash, 23 Texas, 157, explained in Green v. Rugely, 23 Texas, 539; Ansley v. Baker, 14 Texas, 607. In Ansley v. Baker, supra, it is intimated that the creditor has no cause of action on the debt of the ancestor against the heir in possession where there has been no administration, and the attention of the Legislature is called to the probable propriety of an amendment; and in Green v. Rugely, supra, it is intimated that under said section 112 "a right of action is given to creditors against heirs and distributees to the extent of the property which may come to their hands and be held by them in the absence of administration," but whether the right of action referred to was to foreclose the lien, or to take out letters testamentary and then recover the possession of the estate from them, or whether the reference was to the right to a personal judgment similar to the one given in said section 88, is not stated. The General Probate Act of 1870 (General Laws 1870, p. 141-199) was in many respects different from that of 1848, and said section 112 of the latter was entirely omitted, but said section 88, in so far as it imposed a personal liability upon the heir, devisee, or legatee, was substantially incorporated into section 287 of the new act, and in section 4, Act of 1873, p. 110, the personal liability of the heir where no administration has been taken out within four years is limited to the value of the property held by him. We only refer to these acts to show that in all of them the personal liability of the heir was the creature of the statute. The General Probate Act, approved August 9, 1876, which has been brought into our present Revised Statutes, was in many respects a return to said Act of 1848, many of the sections of the first act being copied into the last. Among those so re-enacted are said sections 112, 87, and 88. When the Revised Statutes were enacted, in 1879, said sections 112 and 87 were incorporated therein, but said section 88, upon which we have seen the personal liability of the heir, devisee, or legatee rested, was not, nor has any similar provision been since enacted. The re-enactment of the first two and the omission of the third shows a clear intent that section 112, which is now article 1869, Revised Statutes, should fix the rights of creditors, heirs, devisees, and legatees. The petition in this case alleging that there were qualified executors until they were removed and an administrator appointed, we think the presumption should obtain that the heirs, devisees, and legatees of Epperson did not receive any of the estate until after the administration was closed as alleged, in 1889. Yancy v. Batte, 48 Texas, 59. We are also of opinion that their liability should be governed by the law in force at the time they actually received the property; and since said section 112 of the Act of 1848, now Revised Statutes, article 1869, was then in force, as above intimated the demurrer should have been sustained. For the error in overruling it the judgment against plaintiffs in error will be reversed and the cause remanded. We are aware that our statutes contain provisions imposing personal liability under cer-

tain circumstances, as where the due course of administration is interrupted and the property taken from the hands of the legal trustee in the manner provided by statute (Rev. Stats., chap. 14; Thomas v. Bonnie Bros., 66 Texas, 635); but we do not think such special provisions have any bearing upon this case. Being of opinion that such of plaintiffs in error's assignments as raise questions that will probably arise on another trial were correctly disposed of by the Court of Civil Appeals, we deem it unnecessary to discuss them.

We believe a careful examination of all the decisions of this court in which it has been held that the creditor had a right to a personal judgment against the heir will show that they were governed by the acts above referred to as being in force prior to the first day of September, 1879, when the Revised Statutes took effect, and are therefore not in conflict with the conclusion we have reached in this case, with the probable exception of the case of Mayes v. Jones, 62 Texas, 365. The petition alleged that Mrs. Mayes died about the ——— day of December, 1879, but there was nothing else in the record to show when . she died or when the heirs received the property, and therefore the case was probably governed by the Revised Statutes. No brief was filed for defendant in error, and the court evidently overlooked the fact that said section 88 had not been brought into the Revised Statutes. Under the principle of that decision the eight heirs of Mrs. Mayes might each have occupied as his home 200 acres of land inherited from her, and thus have exempted from the claims of her creditor 1600 acres.

*Reversed and remanded.*

BROWN, Associate Justice, did not sit in this case.

Opinion delivered June 20, 1898.

### FURTHER ARGUMENT INVITED.

DENMAN, ASSOCIATE JUSTICE.—In the opinion herein we expressed our views as to the true construction of section 112, Act approved March 20, 1848. In the preparation of that opinion the writer after a most careful examination overlooked, in some unaccountable way, the fact that section 88 of that act was brought into Revised Statutes of 1879, and therefore we did not feel called upon to determine the question as to what effect the presence of said section 88 in our present statutes should have upon the questions before us. We would be glad to have counsel submit oral or written arguments, or both, upon the effect of such section 88, and as to whether or not the language . "the holder of any such claim," etc., "shall have his action thereon against the heirs," etc., means any more than that he shall have the right by suit to subject the property to the lien given by said section 112 instead of doing so through the probate court, and as to whether the language,

"they shall not be bound beyond the value of the property," etc., means any more than that if they have sold the property to bona fide purchasers, as indicated in the opinion, they shall be held for its value.

BROWN, Associate Justice, not sitting.

Delivered December 22, 1898.

### ON MOTION FOR REHEARING.

DENMAN, ASSOCIATE JUSTICE.—In preparing the original opinion in this case, as heretofore stated, we overlooked the fact that section 88 had been brought into the Revised Statutes, and hence we expressed no opinion as to its effect. We do not think its presence in our probate law should change our ruling. We do not understand that the question had been directly involved in or decided in any case previous to Webster v. Willis, 56 Texas, 468, and what was there said was in reference to the statute therein referred to, which was wholly different from the one before us, in that it expressly provided for a personal judgment. The subsequent cases of Mayes v. Jones, 62 Texas, 365, and Kauffman v. Wooters, 79 Texas, 205, we understand were governed by the statutes we are construing, and, following Webster v. Willis, they announce a different rule from that announced by us in the former opinion herein. We think they do not properly construe the statute, and that they are at variance with the principle of the cases of French v. Grenet, 57 Texas, 273; Northcraft v. Oliver, 74 Texas, 162; and Moore v. Moore, 89 Texas, 29, holding that under the statute the debts of the ancestor are a lien upon the property in the hands of the heir. In Ansley v. Baker, 14 Texas, 612, Hemphill, C. J., referring to the statute we are construing, said: "But apart from these considerations, it is extremely doubtful whether the mere fact of taking possession of an estate by an heir would under our statute be permitted to convert him into an executor de son tort, and subject him to liabilities as such. The statute declares, in effect, that the estate shall immediately on the death vest in the heirs, testate or intestate, as the case may be.. To take possession of property vested by operation of law can not be unlawful, nor can it create liabilities not specially attached to the act by law. At common law, the estate in the personal goods was in abeyance until the grant of administration, but by the statute the whole estate vests immediately in the heirs, subject to the payment of debts as declared by statute. But it is not provided that the heirs as such can be compelled to discharge those debts, nor are they authorized to employ the estate for such purpose; the statute in the same connection declaring that the administrator shall have a right to the possession of the estate as it existed at the death of the deceased, though if debts were fairly paid allowance would no doubt be made for such payments. Hart. Dig., art. 1221. Possession, then, by an heir does not subject him to liability. He holds the property with

the incumbrance, but he can not be required to relieve the estate of the burden." In McCampbell v. Henderson, 50 Texas, 601, the judgment of the trial court ordered the land inherited sold to pay the ancestor's debt. The reversal was upon a question of evidence not relating to the point before us, and we do not think the case is authority here. Low v. Felton seems to have been controlled by the same statute as Webster v. Willis, supra.

The motion will be overruled.

*Motion overruled.*

BROWN, Associate Justice, not sitting.

Delivered April 29, 1899.

# MAY, 1899.