**LOVE et al. v. AUSTIN BRIDGE CO. et al.**
**(No. 3535.)**

Court of Civil Appeals of Texas. Texarkana.
April 23, 1928.

Rehearing Denied April 26, 1928.

1. Highways ⊜➞113(5)—Subcontractors' remedy was on contractor's bond, and not claim against county for failure to retain percentage of contractor's earnings (Rev. St. 1925, art. 5160).

Remedy of subcontractors furnishing labor and material to contractors in improvement of road for county was on contractor's bond to county executed under requirements of Rev. St. 1925, art. 5160, to recover their claims, and provision in main contract that county should retain 10 per cent. of sum shown by engineer's estimate was solely for benefit of county, and subcontractor could not predicate liability of county on county's failure to retain such percentage of earnings.

2. Assignments ⊜➞50(2)—Order for appropriation of existing or potential fund under which debtor might make payment operates as equitable assignment.

Order which appropriates a fund existing or which will arise in due course from contract or arrangement already made operates as equitable assignment of fund, where debtor would be justified in paying debt to alleged assignee.

3. Assignments ⊜➞50(2)—Contractors' written order to county directing payment of all moneys due under road improvement contract operated as equitable assignment.

Written order executed by road contractors to county, directing it to deliver to bank all

moneys, including retainage due or to become due under the improvement contract, operated as equitable assignment of funds in county's hands to bank taking the written order as security.

**4. Executors and administrators ⬧⟲7—Subcontractor held not entitled to personal judgment against independent executrix of contractor's surety, not shown to have disposed of surety's property and converted proceeds though she was sole legatee (Rev. St. 1925, arts. 3464, 5160).**

In action by subcontractor on road contractor's bond under Rev. St. 1925, art. 5160, plaintiff *held* not entitled to recover personal judgment against surety's executrix in her personal capacity, notwithstanding she was the sole legatee under his will as well as independent executrix, under article 3464, where it was not shown that the property of the deceased coming into the hands of such legatee had been disposed of by her and the proceeds converted to her own use.

**5. Highways ⬧⟲113(5)—Where engineer's final estimate, not objected to within 30 days, constituted conclusion of road improvement contract, suit on contractor's bond after lapse of over 13 months was barred (Rev. St. 1925, arts. 5160, 5162).**

Where road construction contract provided for engineer's certification of final estimate on completion of the work and allowed contractor 30 days to suggest changes, making contract final in case of contractor's acquiescence, subcontractor's suit on contractor's bond under Rev. St. 1925, art. 5160, was barred under article 5162 by lapse of more than one year and one month from date of filing engineer's estimate, where correctness of estimate was not challenged, since contract became finally settled either on date of final estimate or at expiration of 30 days thereafter.

**6. Highways ⬧⟲113(5)—Road contractors' cessation of work on bankruptcy constituted "abandonment," barring recovery on contractor's bond after lapse of one year (Rev. St. 1925, arts. 5160, 5162).**

Even if road improvement contract was not finally completed or settled more than one year before commencement of suit on contractor's bond under Rev. St. 1925, art. 5160, failure of contractors to do any further work after adjudication of bankruptcy constituted abandonment of work barring recovery on bond in suit commenced more than one year after such abandonment, under article 5162.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon—Abandonment.]

On Motion of Austin Bridge Company for Rehearing.

**7. Abatement and revival ⬧⟲80—Defense that liability on bond had not arisen held waived by sureties' failure to plead such defense in abatement (Rev. St. 1925, art. 5160).**

In suit by subcontractors on contractor's bond given pursuant to Rev. St. 1925, art. 5160, sureties who failed to plead in abatement in due order of pleading that cause of action on bond had not arisen at time of commencement of suit waived right to object to recovery on that ground.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Action by the Austin Bridge Company against Wesley Love and others, in which the L. D. Jones Construction Company and others intervened. On death of defendant named pending the suit, Mrs. Texana Love, as executrix of his will, was made party defendant in his stead. From the judgment, substituted defendant and others appeal, and plaintiff cross-appeals. Modified and affirmed.

October 17, 1919, Wood county and Harris & Powell (a firm composed of A. J. Harris and Lee H. Powell) entered into a contract in writing whereby, for a consideration specified, said Harris & Powell undertook at their own cost and expense to improve as specified a part of a public road in said county. October 27, 1919, said Harris & Powell made a bond in favor of said county for the sum of $48,925, with Wesley Love, Sam D. Goodson, and Berl M. Pinkard as their sureties, conditioned that they would within the time specified in said contract of October 17, 1919, perform all the terms and conditions thereof and pay all lawful claims for labor performed and injuries incurred in and about the construction of the specified part of said road. It was stipulated in the contract that the work should be paid for as it progressed, on estimates in writing made by the engineer in charge, and that 10 per cent. of the amount of such estimates should be retained by the county "until after the completion of the entire work to the satisfaction of the engineer." According to estimates made by the engineer in accordance with the terms of the contract, Harris & Powell earned thereunder and Wood county became liable to pay them the sum of $207,263.76. In the prosecution of the work the Austin Bros. Bridge Company, a corporation (afterwards known as the "Austin Bridge Company"), under a written contract it had with said Harris & Powell, made June 3, 1921, furnished labor and material for which Harris & Powell became indebted to it in the sum of $14,242.39, all of which indebtedness was paid except $1,913.21. This suit, commenced by the bridge company September 27, 1923, was to recover the $1,913.21. It was against said Harris & Powell and the sureties (said Wesley Love, Sam D. Goodson and Berl M. Pinkard) on their said bond to Wood county, and was also against said county. Wesley Love died pending the suit, and his widow, Mrs. Texana Love, as the executrix of his will and also in her capacity as an individual, was made a party defendant in his stead. For the purpose of showing

---

⬧⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

liability of Wood county to it for the $1,913.-21, the bridge company alleged in its petition:

That on August 29, 1921, Harris & Powell wrote said county as follows:

"You may use this letter as authority to make payments direct to Austin Bros. Bridge Company of Dallas, Texas, for the bridge work they are doing in this (Wood) county on our contract. They are to receive our contract price on each and every item for this bridge work. Trusting that you will see that each estimate is promptly paid to Austin Bros. Bridge Company. We remain, Yours very truly,

"Harris & Powell."

That said county had retained of money it owed said Harris & Powell more than sufficient to satisfy the $1,913.21 Harris & Powell owed it. That said county was authorized and directed by said letter to pay the bridge company the amount Harris & Powell owed it, but had "failed, neglected, and refused" to do so, although claim therefor had been duly presented to it. That if said county had not retained money it was authorized by its contract with said Harris & Powell to retain, but, instead, had paid Harris & Powell the full amount it was due them. That such payment was unlawful and wrongful in that same was made "with full knowledge that the said defendants (Harris & Powell) were indebted to this plaintiff (the bridge company) for said work done in the performance of said contracts and that plaintiff was expecting to be paid out of said funds so held by said county, and said sums were so paid out to the said Harris & Powell, or their order, in violation of the terms of the contract between Harris & Powell and Wood county and the express order given to the defendant Wood county to pay to plaintiff the amount due it for said work and material furnished and performed under said contract."

At times specified the following parties, respectively, claiming that Harris & Powell were indebted to them in sums specified, for the payment of which the sureties on the bond of said Harris & Powell to Wood county were liable, intervened in the suit, to wit, November 5, 1923, the J. D. Jones Construction Company in the sum of $2,148; October 7, 1924, L. D. Calloway in the sum of $800; February 7, 1924, the First National Bank of Mineola in the sum of $23,342.72. Harris & Powell were adjudged to be bankrupts August 29, 1922, and were discharged as such September 20, 1923. The trial was to the court without a jury and resulted in a judgment as follows: In favor of the First National Bank of Mineola against Wood county for $3,223.10, the amount unpaid by said county of the $207,523.12 earned by Harris & Powell under its contract with the county; against Mrs. Texana Love as independent executrix of the will of Wesley Love, deceased, B. M. Pinkard, and Sam D. Goodson; in favor of the Austin Bridge Company, for $1,913.21 and interest thereon from February

25, 1922; in favor of the J. D. Jones Construction Company for $2,130.60; and in favor of L. D. Calloway for $796.16 and interest thereon from January 1, 1923. A recovery of anything against Harris & Powell by any of the parties was denied because of their discharge in bankruptcy. The bridge company and the interveners were denied the recovery they respectively sought against Wood county and Mrs. Texana Love individually; and the First National Bank of Mineola was denied the recovery it sought against Mrs. Texana Love as independent executrix of the will of Wesley Love, deceased, Sam D. Goodson, and B. M. Pinkard. Thereupon the bridge company prosecuted an appeal from the judgment so far as same denied it a recovery of anything against Wood county and against Mrs. Texana Love individually, and said Mrs. Texana Love, Sam D. Goodson, and Berl M. Pinkard prosecuted an appeal therefrom so far as it was against them.

W. H. Shook, of Dallas, and G. W. Gibson, of Jacksonville, for appellants.

W. M. Harris, of Dallas, and Lightfoot, Robertson & Scurlock, of Fort Worth, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] The bridge company insists the trial court erred when he held the provision in the contract between Wood county and Harris & Powell that the former should retain 10 per cent. of sums shown by the engineer's estimates to have been earned by the latter was for the benefit of the county alone, and that the bridge company could not predicate liability to it on the failure of the county to retain such part of such earnings. As we understand them, none of the cases cited by the bridge company as supporting its contention do so; and we agree with the trial court that the remedy of the bridge company and others who had furnished labor and material to Harris & Powell, if any they had, was on said Harris & Powell's bond to Wood county executed in compliance with the requirement of article 5160, R. S. 1925, as follows:

"Any person, firm or corporation entering into a formal contract with this state or its counties or school districts or other subdivisions thereof or any municipality therein for the construction of any public building, or the prosecution and completion of any public work, shall be required before commencing such work, to execute the usual penal bond, with the additional obligation that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract. Any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the state or any municipality on the

bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claims and judgment of the state or municipality. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the state or municipality, the remainder shall be distributed pro rata among said interveners."

It appeared that at the time of the trial the county owed Harris & Powell a balance of $3,223.10 on the contract between them. Notwithstanding evidence showing that the latter wrote the letter of August 29, 1921, to the former, set out in the statement above, directing it to pay to the bridge company sums due them on account of bridge work, the trial court determined that the bridge company was not entitled to have the $1,913.-21 due it paid out of said $3,223.10, but that the First National Bank of Mineola, to which Harris & Powell were then indebted in a sum in excess of $12,500, was entitled to recover the entire $3,223.10, because, the court found, that to secure money the bank loaned them to pay for labor and material in the performance of their contract with the county, Harris & Powell, about March 1, 1920, "executed a written order to Wood county directing said county to deliver to said First National Bank of Mineola all money, including retainage, due and that became due for the construction of the road under their contract with Wood county. This letter of instruction was filed with Wood county about the date above mentioned and, with few exceptions, all warrants issued by Wood county for construction of said road were issued to Harris & Powell and delivered to said bank and were by the bank applied to the indebtedness of Harris & Powell."

The order the court referred to had been lost (or, more likely, testimony indicated, destroyed by fire shown to have destroyed a part of the records of Wood county), and the bridge company insists the evidence did not warrant the finding as to the contents thereof. But we think it did.

[2, 3] The bridge company insists, further, that if the order was as found by the court, it did not operate as an assignment of funds in the hands of the county, but "was (quoting) a mere direction to the county as to the payment of the funds." On the other hand, the bank insists the court had a right to say the order was effective as an equitable assignment to it of sums due and to become due Harris & Powell by the county.

We agree the court had such a right. It appeared from uncontradicted testimony that soon after they entered into the contract with Wood county, Harris & Powell became indebted to the bank for money loaned to them to enable them to carry on the work they had undertaken, that such indebtedness amounted to over $12,500 July 20, 1920, and that it never thereafter amounted to less than that sum.

"Any order, writing or act which makes an appropriation of a fund amounts to an equitable assignment of that fund." 3 Story on Equity, par. 1408. "The fund need not be actually in being if it exists potentially—that is, if it will in due course of things arise from a contract or arrangement already made or entered into when the order is given—the order will operate as an equitable assignment of such fund as soon as it is acquired." 3 Pomeroy's Equity, par. 1283. "The true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming to be assignee." 2 R. C. L. p. 615; and see 5 C. J. 909 et seq., and authorities there cited. Assuming the test suggested was one the trial court had a right to apply in determining whether the order in question operated as an assignment to the bank or not, we think it is clear it can not be said his conclusion was unwarranted.

[4] The contention of the bridge company that the trial court erred when he refused to render judgment in its favor against Mrs. Texana Love in her individual capacity as well as in her capacity as executrix of the will of Wesley Love, deceased, is based on the fact, as agreed to at the trial, that she was the sole legatee under said will as well as independent executrix thereof. In support of its contention the bridge company cites article 3464, R. S. 1925, providing that:

"Any creditor may sue any distributee, or he may sue all the distributees together, who have received any of the estate; but no one of such distributees shall be liable beyond his just proportion according to the estate he may have received in the distribution."

We think the contention should be overruled without respect to whether a cause of action in favor of the bridge company ever arose against the sureties on Harris & Powell's bond, or, if one did arise, whether it became barred by operation of article 5162 of the statutes hereinafter set out. It is held that said article 3464 does not entitle a creditor to a personal judgment against an heir, legatee or devisee in the absence (as here) of pleading and proof that property of the decedent coming into the hands of such heir, legatee or devisee had been disposed of by him and the proceeds converted to his own use. Blinn v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931; Chicago, R. I. & G. Ry. Co. v. Duncan (Tex. Civ. App.) 273 S. W. 908; Hughes v. Hughes (Tex. Civ. App.) 264 S. W. 579; Roberts v. Carlisle (Tex. Civ. App.) 287 S. W. 110; Elmo v. James (Tex. Civ. App.) 282 S. W. 835; Patton v. Smith (Tex. Civ. App.) 221 S. W. 1034.

[5] The contention of the other appellants, to wit, Mrs. Texana Love, Sam D. Goodson, and Berl M. Pinkard, that the judgment was unauthorized so far as it was against them, is on the theory that the suit was not maintainable against them because of a failure of

the bridge company and interveners to comply with requirements in article 5162, R. S. 1925. Said article is as follows:

"When suit' is instituted by any creditor on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later; provided that if the contractor quits or abandons the contract before its consummation, suit may be instituted by any of such creditors on the bond of the contractor, and shall be commenced within one year after abandonment of said contract and not later. Where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contractor and not later."

It will be noted that by the terms of said article of the statutes suit by the bridge company and the interveners must have been commenced "within one year after the performance and final settlement of said contract, and not later," unless, before the consummation thereof, Harris & Powell quit or abandoned the contract, in which event the bridge company and interveners were authorized to commence suit on the bond "within one year after abandonment of said contract and not later."

Said appellants insist it appeared, as found by the trial court, that work under the contract was completed about August 11, 1922, when final estimates by the engineer in charge were filed with the commissioners' court on that day, and also appeared, contrary to the finding of said court, that a final settlement of the contract was then had between said Harris & Powell and said county; or, if it did not appear that such a settlement was then had, it conclusively appeared, contrary to the finding of said court, that Harris & Powell quit or abandoned the contract August 29, 1922, when they were adjudged to be bankrupts. Hence it appeared, appellants say, that whether the contract was completed or abandoned as stated, the bridge company's and interveners' right to maintain a suit thereon by the express terms of the statute became barred before September 27, 1923, when this suit was commenced. Said appellants insist, further, that if a final settlement of the contract was never had, as found by the trial court, and if Harris & Powell never abandoned the contract, as further found by said court, a cause of action thereon never arose and the judgment against them for that reason was unauthorized.

We think the contention must be sustained. Following a provision in the contract between Harris & Powell and the county that "the action of the engineer by which the contractor is to be bound and concluded according to the terms of the contract shall be evi-

denced by the final estimate," is a provision that:

"The engineer, when satisfied that the contractor shall have completed the work in accordance with the terms of the contract, shall certify the aforesaid final estimate for payment. The contractor shall check the final estimate for errors, and unless the engineer is notified within 30 days of any change that the contractor believes should be made, then the final estimate as rendered shall be considered as the proper and final payment of all moneys due the contractor; and .the contractor's acceptance of the final estimate shall constitute a conclusion of the contract in so far as payments due him are concerned, and said acceptance shall be taken as his. acquiescence in the final estimate."

The court found that work under the contract "was completed about August 11, 1922," and it appeared from the testimony that the final estimate of the engineer in charge was filed with the commissioners' court on that day. We have found nothing in the record indicating that the correctness of such final estimate was ever questioned by Harris & Powell. The work Harris & Powell were to do under the contract having been completed at the time stated and the amount due therefor having been then ascertained in the way provided in the contract, we think it should be held that a final settlement of the contract was had on said August 11, 1922, or, if not then, at the expiration of 30 days from that date. United States v. Starr (C. C. A.) 20 F.(2d) 803; Antrim Lumber Co. v. Hannan (C. C. A.) 18 F.(2d) 548; Mandel v. United States (C. C. A.) 4 F.(2d) 629; United States v. Rangely Construction Co. (D. C.) 288 F. 76. In that view, a right to maintain a suit on the bond against the sureties was barred at the time (September 27, 1923) this suit was commenced.

[6] We are also of the opinion, if we have erred in holding it appeared as a matter of law that there was a final settlement of the contract at the time stated, that it appeared Harris & Powell had quit and abandoned the contract August 29, 1922, when they were adjudged to be bankrupts. It was undisputed in the evidence that they never did or offered to do any work under the contract after that time, and Powell, testifying as a witness, said they then quit and abandoned the work.

If we have erred in holding, contrary to the findings of the trial court, that it appeared as a matter of law from the testimony that there was a final settlement of the contract August 11, 1922, or 30 days after that date, and in holding, if there was not such a settlement at that time, that Harris & Powell had quit or abandoned the contract August 29, 1922, then we think it must be said, on the record before us, that a cause of action against the sureties on the bond of Harris & Powell had not arisen at the time this suit was commenced.

The judgment will be so modified as to

deny the bridge company and the interveners, J. D. Jones Construction Company and L. D. Calloway, a recovery of anything against Mrs. Texana Love, Sam D. Goodson, and Berl M. Pinkard, and, as so modified, the judgment will be affirmed. The costs of the bridge company's appeal will be adjudged against it, and the costs of Mrs. Texana Love, Sam D. Goodson, and Berl M. Pinkard's appeal will be adjudged against the bridge company, the J. D. Jones Construction Company, and L. D. Calloway.

## On Motion of Austin Bridge Company for Rehearing.

[7] The contention in the motion that this court erred when it held that the sureties on the bond of Harris & Powell had a right to defend against the recovery sought against them on the ground that a cause of action on the bond had not arisen at the time the suit was commenced is sustained. The bridge company insists, and we agree, that the sureties were in the attitude of having "waived [quoting] their right to object on that ground by not pleading the same in abatement in due order of pleading." As correcting the error does not require a different disposition to be made of the appeal, the motion is overruled.