### CAVITT ·v. GULLEDGE.  (No. 6585.)

(Court of Civil Appeals of Texas. Austin. May 23, 1923. Rehearing Denied June 28, 1923. Writ of Error Dismissed for Want of Jurisdiction Oct. 17, 1923.)

**1. Corporations ☞123(16)—Evidence ☞161 (3)—Evidence of one who read newspaper and letterhead not best evidence, and not admissible to show knowledge of facts by pledgor of stock.**

Where there was no proof that pledgor of corporate stock had read a newspaper or letterhead showing pledgee to be a stockholder and director of the company other than evidence that he lived in the town where the paper was published and the corporate business carried on, evidence of a witness that he had read such facts in a newspaper and had seen a letterhead of the company with pledgee's name printed thereon as, a director was not admissible to show pledgor's knowledge of such facts, and such evidence was inadmissible as not the best evidence.

**2. Corporations ☞123(5) — Newspaper and letterhead showing pledgee of stock was stockholder and director of company not conclusive that stock was not held as collateral, and evidence thereof inadmissible.**

The fact that a newspaper and letterhead showed· that pledgee of stock had become a stockholder and director in the company was not inconsistent with an agreement that pledgee was ·to collect dividends and apply them on the loans, and hence it was not error to refuse evidence that witness had read such newspaper, and had seen a letterhead of the company with pledgee's name printed thereon as director, in suit involving question whether the stock was still held as collateral.

**3. Limitation of actions ☞45—Limitations began only when pledgor of stock had notice that pledgee asserted claim of ownership inconsistent with his.**

Where corporate stock was pledged as collateral security for loans to pledgee's principals, and pledgee was to collect dividends thereon and apply them on the loans, limitation did not begin to ·run against pledgor's suit for an accounting until pledgor had notice that pledgee asserted claim of ownership inconsistent with his, and he was under no duty to exercise diligence to ascertain if pledgee was claiming the stock in some other capacity, though pledgee had the stock transferred on the corporation's books, collected the dividends, and,·when the loans matured, offered the stock for sale.

Appeal from District Court, McLennan County; Jas. P. Alexander, Judge.

Suit by John F. Gulledge against J. F. Cavitt. Judgment for plaintiff, and defendant appeals. Affirmed.

H. Scharff and Williams & Williams, all of Waco, for appellant.

J. D. Williamson, of Waco, for appellee.

BLAIR, J. Appellant's statement of the case is substantially correct, and it is as follows:

"The appellee, J. F. Gulledge, instituted this suit against the appellant, J. F. Cavitt, and First National Bank of McGregor, on the 19th day of April, A. D. 1920, alleging that about six years prior to instituting this suit, he executed his note for $4,000 to Mrs. Cavitt, mother of appellant, and that as security for the note he hypothecated with appellant one-third of the capital stock of the McGregor Dry Goods Company, and that said stock was also security for an indebtedness owing by appellee to First National Bank of McGregor, and

both bank and Mrs. Cavitt were acting in the matter by appellant; and further alleged that dividends had been paid on stock every year since it was hypothecated, and the amount of said dividends was more than sufficient to pay off and satisfy the indebtedness of Mrs. Cavitt, and that said excess amounted to about $3,000. The appellant further alleged that Cavitt had not turned said excess dividends and stock over to First National Bank of McGregor, but had retained possession thereof, and had appropriated the same to his own use and benefit, and though he had asked Cavitt to surrender said stock to himself or said bank that Cavitt had refused, and appellee prayed that appellant be required to turn over to First National Bank of McGregor the stock and surplus dividends, and that in the event that he has converted said stock and money to his own use the appellee prayed for full amount of his damages.

"The appellant answered by general denial, also pleading statute of limitation of both two and four years, and specially pleading that he had assumed payment of said note to his mother and that in consideration of assumption of said note, the appellee sold and transferred said stock to him as his individual property. The appellant also tendered the stock into court, only in the event that the court found against him on his pleas of limitation and sale of stock to him. The First National Bank of McGregor answered that it had not sufficient knowledge to either affirm or deny the matters set out in pleadings of either appellee or appellant, and prayed the court to protect its rights and for attorney's fees. The court submitted the case to the jury on special issues, and the jury returned a verdict in favor of appellee, and on which verdict the court rendered judgment for appellee in the sum of $2,-627.21, and for title and possession of the 41⅔ shares of stock, with directions that both the money and stock be delivered to First National Bank and the money applied to appellee's debt with said bank, and the stock be retained by bank until its debt is paid. Motion for new trial was seasonably filed by appellant, and was by the court overruled, to which action of the court, appellant, in open court, excepted and gave notice of appeal and filed his supersedeas bond, bringing the case before this court for review."

### Findings of Fact.

The proof shows: That on March 23, 1914, the appellee executed a note to Mrs. Cavitt, mother of J. F. Cavitt, appellant herein, for the sum of $4,000, payable 10 months thereafter, and appellant represented his mother as her agent in the transaction. To secure this note, appellee placed in the possession of the appellant, J. F. Cavitt, as collateral security, one-third of the capital stock of the McGregor Dry Goods Company, a corporation. The capital stock of said company was $12,500, issued in shares of $100 each. That soon after this transaction, the appellant, Cavitt, became the active manager or active vice president of the First National Bank of McGregor, to which institution appellee owed a considerable debt. Appellant, Cavitt,

255 S.W.—50 .

acting in his official capacity for said bank, called upon appellee relative to getting some security for the bank debt, and as a result of this negotiation a written agreement was entered into, which said written agreement was not offered in evidence, but was represented to provide, in substance, that the said stock was not only collateral to Mrs. Cavitt's note, but was also to stand as collateral to appellee's indebtedness to the First National Bank, and that appellant was to apply the dividends of said stock, first, to the payment of Mrs. Cavitt's note until it was fully paid, and then to apply the same to appellee's debt to the bank, and the stock was to be held by appellant, Cavitt, and the dividends collected for said purposes. That some three or four months after this agreement was entered into, appellee's business firm, a private corporation of which he was the president, became seriously involved financially, and was later declared bankrupt. However, appellee, individually, was not declared to be a bankrupt. That just previous to this time, appellant, Cavitt, again called upon appellee, and requested of him a transfer on the books of the corporation of the stock so pledged as collateral, stating that this would be necessary in order that said stock might stand as absolute collateral for his mother's note and also the bank's note. In accordance with this request, appellee, by due assignment, transferred the stock on the 30th day of December, 1915, to appellant. On the same day the transfer was made on the books of the company, and also on the same day appellant was elected a director of the corporation. That after this transaction, appellee became ill, suffering from a nervous breakdown, and testified that possibly for a short period of time thereafter he was not mentally able to care for his business. No further conversation was had about the matter until December, 1918, when appellee called upon appellant, at his office, and made inquiry as to how nearly the debt of Mrs. Cavitt's lacked of being paid by the dividends on the stock pledged as collateral, and when the payments would begin on the bank's note; to which inquiry appellant replied that he did not consider appellee had any interest in the stock, or any right to ask about it, since he considered the assignment to himself a sale, as he understood he had assumed the payment of his mother's note, in consideration of appellee's transferring the stock to him. This was appellee's first information that appellant was claiming the stock as his own. That thereafter, in the early part of 1919, after several conversations, appellant agreed that if appellee would, within three days, pay the balance due on his mother's note and the bank's note, he would turn the stock over to him without any profits to himself; and furnished figures to appellee showing a balance yet due in the sum of $5,930.47; that thereafter, on February 27, 1911, and within the three days

allowed, John D. Nalor executed his note to the First National Bank of McGregor, Tex., for the said sum of $5,930.47, at the request of appellee, to which note was to be attached the stock when turned over by Cavitt. The bank accepted the note, and agreed to make the loan, but appellant refused to accept the money, as was agreed, and refused to deliver the stock to either appellee or the bank; and thereafter, on the 19th day of April, 1920, this suit was filed.

Appellant collected the following dividends on the stock:

| | |
|---|---|
| January 9, 1917 | $1,500 00 |
| January 25, 1918 | 2,083 33 |
| January 27, 1919 | 1,041 66 |
| January 26, 1919 | 2,500 00 |
| January 5, 1921 | 625 00 |
| Making a total sum of | $7,749 99 |

The testimony showed the stock to be of the value of $150 per share at the time of the transfer by appellee to appellant. The jury found, in answer to the four special issues submitted, first, that Cavitt held the stock as collateral; second, that Gulledge did not sell the stock to Cavitt by said transfer of December 30, 1915, in satisfaction of his debt to Cavitt; third, that Gulledge's cause of action was not barred by the two-year statute of limitation; and, fourth, that the stock so issued and received by Cavitt, dated December 30, 1915, was held by him as collateral security of the debt of appellee to him.

## Opinion.

[1, 2] By his first proposition, appellant contends that the court erred in not permitting a witness to testify that he (the witness) read an article in a newspaper, published in McGregor, Tex., stating that J. F. Cavitt, appellant herein, had became a stockholder and a director in said McGregor Dry Goods Company; and also that he had seen a letterhead of said company thereafter, with the name of J. F. Cavitt, appellant herein, printed thereon as a director, on the ground that such tended to show that appellee had knowledge that appellant was asserting ownership of the stock.

There was no proof that appellee read the paper or letterhead of the company, other than by the circumstance that he lived in the same town where the paper was published and where the business was carried on. We think the court was correct in excluding the evidence, first, because the paper and letterhead would have been the best evidence; and, second, because no showing was made, except by remote circumstance, being the fact that appellee lived in the same town in which the paper was published and the business carried on, that appellee had seen or read either the paper or letterhead; and, third, the mere fact that the paper or letterhead contained such statements would not in any way be conclusive that the interest acquired by appellant was by reason of appellee's transfer of his stock, and would not be inconsistent with their agreement that appellant was to collect the dividends and apply the same on the notes held by Cavitt against appellee.

[3] By his second and third propositions, appellant contends that the trial court erred in failing to correctly instruct the jury as to when limitation would commence to run against appellee's cause of action, urging that the jury should also have been told that limitation would commence to run when, by the exercise of reasonable diligence, the appellee could or should have known that appellant was asserting some claim of ownership inconsistent with that of appellee's. The instruction given is as follows:

"Issue No. 2. Was the plaintiff's cause of action barred by limitation on April 19, 1920, at the time this suit was filed? In this connection, you are instructed that, if you find from the evidence in the case that the stock in question was deposited with defendant Cavitt as collateral to secure the payment of the indebtedness in question, and that defendant, Cavitt, afterwards claimed said stock as his own, and that at any time more than two years prior to the filing of this suit, to wit, April 19, 1920, the plaintiff Gulledge knew that the defendant, Cavitt, was claiming said stock as his own, then the plaintiff's cause of action would be barred by limitation; otherwise it would not."

The objection to the court's charge for failing to incorporate this proposition of law being overruled, appellant then presented, in due time and form, the following requested charge, which incorporated the proposition of law complained of and which was refused by the trial court:

"You are instructed as part of the law of this case to be considered in connection with special issue No. 2 of court's main charge that, if you find from the evidence in the case that the stock in controversy was claimed by the defendant, Joe Cavitt, as his own at any time more than two years prior to the filing of this suit, and that the plaintiff Gulledge knew that the defendant Cavitt was claiming ownership of the stock or by the exercise of reasonable diligence could have known of same, then the plaintiff's cause of action is barred by limitation. The foregoing requested charge is asked by defendant only in event that the requested instructions Nos. 1, 3, and 4 of the defendant are refused."

This objection to the court's charge and the refusal to give the special requested charge are made the basis of appellant's second and third propositions, and correctly raise the point of law for our consideration.

We do not sustain the propositions. The evidence in the case did not entitle appellant to the requested charge; and therefore the objection to the court's charge, in not containing the proposition presented by the said charge, is without merit.

The suit was primarily one for an accounting of the dividends collected by appellant on the stock under the contract with appellee. The contract was that appellant, as agent of Mrs. Cavitt and the bank, and as trustee of appellee, would collect the dividends on the stock pledged by appellee to secure the notes of Mrs. Cavitt and the bank, and with it pay first the former note and then the bank's note. In this dual or treble capacity, he occupied a position of highest trust and confidence to all parties. To his mother and the bank he was their trustee, agent, and representative; to appellee he was pledgee as the agent of Mrs. Cavitt and the bank of the stock in question; and was trustee of appellee in the matter of collecting the dividends on said stock, and in applying the same in payment of the debts secured thereby. The notes were made payable to his principals, and spoke their own tenor and effect, and the only duty of appellant was to make a good investment for his principals' funds and to safely secure them. But to appellee he owed a still higher duty, for he took his property in his own name and in order that he might more effectively perform his services to his principals, and make them absolutely secure in their loans to appellee. These facts are not recited to reflect upon appellant, or to charge him with any wrongdoing further than that found by the jury, but for the purpose of determining whether, under all the facts and circumstances of this case, he is entitled to the requested charge.

By this contract a fiduciary relationship existed between appellant and appellee. The evidence further showing that they were close friends, and reposed the utmost confidence in the honesty and integrity of each other. We are therefore of the opinion that, under the facts of this case, appellee was not put upon any inquiry; nor was it his duty to exercise any diligence to ascertain if appellant was holding said stock in any capacity other than under their contract, and the presumption would be, in the absence of actual notice, that he was holding the stock under the contract as trustee and pledgee of appellee. Besides, as a matter of law, we find nothing in this record which would charge appellee with notice that appellant was holding the stock inconsistent with his contract, or with his claim thereto, since as pledgee of the stock appellant had the right to have the stock so pledged transferred on the books of the corporation to himself, and no legal presumption would arise therefrom that he had converted it. Neither is the offer for sale of stock by the pledgee, when the note for which it is given as security is due, an assertion of right thereto inconsistent with the holding of the same as collateral. Neither is the collection of dividends by the pledgee of stock an assertion of ownership, or repudiation of his trust.

We are therefore of the opinion that the court correctly charged the jury in this case that limitation would commence to run against appellee's cause of action when he first obtained notice that appellant was asserting some claim or ownership thereof inconsistent with his own. The propositions are therefore overruled. Davis v. Hardwick, 43 Tex. Civ. App. 71, 94 S. W. 360; Jones v. Thurmond, 5 Tex. 319; Jones on Collateral Security, § 727; Fletcher Cyclopedia Corporations, vol. 6, §§ 3911, 3925; Fulton v. National Bank, 26 Tex. Civ. App. 115, 62 S. W. 84; Leach v. Wilson Co., 68 Tex. 353, 4 S. W. 613.

We are of the opinion that there is no error in this judgment, and it is therefore affirmed.

Affirmed.