**BURNEY v. BURNEY.   (No. 6652.)\***

(Court of Civil Appeals of Texas. Austin. March 12, 1924. Rehearing Overruled April 16, 1924.)

1. **Limitation of actions ⊚⇒103(4)—Grantee admitting plaintiff's payment of part of purchase price cannot set up limitation against action to establish equitable interest.**

Defendant, admitting in his pleadings and testimony that plaintiff, suing to establish equitable interest in and to partition or sell land, conveyed to defendant, paid part of purchase price, and owned equitable interest to such extent, could not set up claim of limitation, unless he repudiated his trust and notified plaintiff of repudiation.

2. **Limitation of actions ⊚⇒39(12)—Whether action is to recover realty within exception to four-year statute depends on whether plaintiff's title will support action in trespass to try title.**

Whether action be one to recover realty within exception to four-year statute (R. S. art. 5690) depends on whether title asserted by plaintiff, whether legal or equitable, will support action in trespass to try title.

3. **Trespass to try title ⊚⇒10—Equitable title will support action.**

Equitable title will support action in trespass to try title.

---

**4. Limitation of actions ☞39(12)—Suit to establish equitable interest in land held suit to recover "realty" within exception to four-year statute.**

Suit to establish equitable interest in land conveyed to defendant to extent of part of purchase price paid by plaintiff *held* suit to recovery "realty," within exception to four-year statute (Rev. St. art. 5690).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Property.]

**5. Limitation of actions ☞103(4)—Trustee cannot set up adverse title against beneficiary without repudiation of trust.**

Grantee who allowed intervener's suit, in grantors' unsuccessful suit to cancel deed on ground that stock given in part payment was worthless, to go to judgment against him (grantee), and who bought land by paying off judgment, knowing that he held in trust the interest in the land paid for by the stock, which belonged to another, could not assert adverse title to land against the former owner of the stock, who was without actual knowledge of facts, since no limitation will run in favor of trustee against beneficiary until trust is clearly and unequivocally repudiated, and notice thereof given beneficiary.

**6. Limitation of actions ☞100(11)—Owner of corporate stock held not lacking in diligence in discovering fraud.**

Delay of aged uncle, who intrusted his corporate stock to nephew, who was officer of the corporation, and lived in another county, in discovering nephew's fraud in representing that stock was lost by compromise of suit, to rescind sale of land for which given in part payment *held* not lack of diligence starting limitations running.

**7. Limitation of actions ☞100(1) — Statute will not run, in case of fraud, until it is discovered or should have been discovered.**

Limitation will not run, in case of fraud, until fraud is discovered, or by reasonable diligence should have been discovered.

**8. Appeal and error ☞1002—Jury findings on conflicting evidence not disturbed, unless against preponderance of evidence.**

Jury findings on conflicting evidence will not be disturbed, unless so against overwhelming preponderance of evidence as to show prejudice.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by W. D. C. Burney, on whose death Martha Burney, as executrix, was substituted, against J. G. Burney. Judgment for plaintiff, and defendant appeals. Affirmed.

D. H. Doom, of Austin, for appellant.

J. B. Robertson, of Austin, and H. C. Geddie, of Kerrville, for appellee.

BAUGH, J. W. D. C. Burney, as plaintiff below, brought suit against J. G. Burney on March 14, 1917, in the district court of Travis county, to establish his interest in certain blocks of land situated in the city of Austin, for rents, and for partition of the land or sale thereof in case partition were found impracticable. The case was submitted to a jury on special issues, and based on their findings the court rendered judgment for the plaintiff, and appointed a receiver to sell the property. Before trial, however, W. D. C. Burney died, and his wife, Mrs. Martha Burney, independent executrix of his will, was substituted as plaintiff. Defendant duly made a motion for a new trial, which was overruled, and he appeals, making the grounds urged for a new trial his assignments of error.

The following facts appear: In October, 1909, W. D. C. Burney turned over to his nephew, J. G. Burney, for sale by him, 15 shares of capital stock in the Union Trust Company of San Antonio, Tex., of the par value of $100 each. On November 8, 1909, Hetta K. Haynie and husband conveyed to J. G. Burney the lands involved in this suit at an agreed consideration of $3,500, paid as follows: The transfer to Haynie of said 15 shares of stock at a value of $1,725, payment by J. G. Burney individually of $625, and his assumption of a note for $1,150 secured by a mechanic's lien on the property. Title to the property was taken in the name of J. G. Burney, who then rented the property to his vendors. On January 10, 1910, the Union Trust Company went into the hands of a receiver, and on January 12, 1910, the Haynies sued J. G. Burney to cancel their deed, alleging fraud in that the stock was worthless. The parties to this suit agreed upon a compromise to place each other in statu quo, but the Haynies had hypothecated this stock, and could neither return it nor repay Burney the $625 in money, so that suit remained on the docket until June 8, 1912. Meantime the holder of the $1,150 note assumed by Burney intervened and sought a foreclosure of his lien. On June 8, 1912, judgment was rendered in that cause that the Haynies take nothing and that Burney recover his costs against them. Judgment was also given the intervener against Burney on his assumption of the outstanding note and lien, foreclosing the lien and ordering the property sold. The property was sold by the sheriff under this order of sale, and J. G. Burney, on August 6, 1912, bought it in at $1,500, again taking title in his own name. Some time in 1915 the Haynies returned to J. G. Burney the Union Trust Company stock, which was then admittedly worthless, and in a letter dated July 19, 1915, J. G. Burney mailed same to W. D. C. Burney, advising him that he had been compelled to foreclose on the Austin property and sell it to get his money out of it. W. D. C. Burney lived in Kerr county, knew little about what was being done, was more than 80 years old, nearly blind, and

seems to have intrusted the handling of the matter to his nephew, J. G. Burney, who then resided in Austin. J. G. Burney paid all taxes, insurance, repairs, etc., on the property at all times after 1909, and collected and kept all rents. Defendant pleaded a willingness to turn over to plaintiff the property involved, if plaintiff would repay to him all moneys he had expended, with interest thereon; and also pleaded the 3, 4, 5 and 10-year statutes of limitation. The issues raised are disclosed by the questions submitted to the jury, which, with the jury's answers thereto, are as follows:

"Question No. 1: What date did the defendant, J. G. Burney, inform the plaintiff, W. D. C. Burney, of the fact that he had traded stock of the Union Trust Company as part consideration for the property described in plaintiff's petition?" To which the jury answered: "About 1910."

"Question No. 2: Did the defendant, J. G. Burney, after he had traded plaintiff's stock as a part of the purchase price of the land described in plaintiff's petition, report to the plaintiff that he, the defendant, had been sued to rescind said trade for said land, and had been forced to compromise said suit; that he had incurred great expense, and had lost plaintiff's stock by reason of said suit?" To which the jury answered: "Yes."

"If you have answered the above question in the affirmative, then you will answer this question:

"Question No. 3; Were said facts true?" To which the jury answered: "No."

"Question No. 4: Was the plaintiff, W. D. C. Burney, misled and deceived by the report made to him by the defendant, J. G. Burney?" To which the jury answered: "Yes."

"Question No. 5: Did the plaintiff, W. D. C. Burney, authorize the defendant, after the purchase of said property, to handle said property as he saw fit, to use his best judgment and dispose of it, repay himself everything that he, the defendant, had paid out on it, and give him, the plaintiff, the balance?" To which the jury answered: "No."

"Question No. 6: Did the plaintiff, W. D. C. Burney, know at the time he received a letter from J. G. Burney, in July, 1915, in which the stock certificates were sent him, that the legal title to the land in controversy was still in J. G. Burney?" To which the jury answered: "No."

"Question No. 7: Did J. G. Burney, after he secured the sheriff's deed to the property involved in this suit introduced in evidence, attempt to induce W. D. C. Burney to believe that said property had been lost by both of them with the intent to deprive W. D. C. Burney of his interest in said property?" To which the jury answered: "Yes."

## Opinion.

Appellant asserts eight propositions of law on which he claims error of the trial court in rendering judgment against him. His first and second propositions are addressed to the questions of limitation of 4 and 5 years. He claims that the trial court should have rendered judgment in his favor on these issues regardless of the findings of the jury.

[1-4] The question of whether the 4-year statute of limitation applies in this case depends upon whether this was a suit "for the recovery of real estate" as that language is used in article 5690 of the Revised Statutes. In his amended petition plaintiff sought to establish his equitable interest in the lands involved in the suit, and asked for a partition or sale thereof. Appellant, who was defendant below, in his answer pleaded legal title to the property by virtue of both the deed from the Haynies on November 8, 1909, and the sheriff's deed of August 6, 1912, and also that he had title by virtue of the statutes of limitation of 3, 5, and 10 years. All of this was denied by plaintiff in supplemental pleadings. The pleadings themselves we think clearly place the title to the land in issue. It is not necessary for us to consider the deed from the Haynies executed in 1909 on the issue of limitation at all. So far as that deed was concerned, defendant admits both in his pleadings and his testimony that his uncle, W. D. C. Burney, paid the purchase price for the lands to the extent of $1,725, at which his stock was accepted by the grantors, and that he owned an equitable interest in the lands to that extent. He admits that he so advised the appellee. That being true, he was a trustee of appellee's interest in these lands, and no claim of limitation against his beneficiary could have arisen, unless and until he repudiated such trust, and such repudiation was made known to the beneficiary. No such repudiation is even claimed prior to the sale of the land by the sheriff under order of sale in August, 1912. Hence no limitation of any character arose under the Haynie deed to appellant. Appellant relies in support of his proposition on this point on the case of McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315, and on subsequent authorities sustaining the rule there laid down by Mr. Justice Williams. But we do not consider the facts in that case analogous to the instant case. As stated in Carl v. Settegast (Tex. Com. App.) 237 S. W. 241:

"It is * * * well settled upon authority in this state that the test whether an action be one to recover real estate, within the express exception to this article [R. S. 5690], is whether the title asserted by plaintiff, whether legal or equitable, will support an action in trespass to try title. In determining this question mere form in which the action is brought is not material. * * * On the other hand, it has been repeatedly held that, where plaintiff's action rests upon an equitable title, to assert which does not require the aid of a court of equity to remove the impediment to such title caused by some written instrument or judgment, the action is one for the recovery of real estate, and the four-year statute of limitations does not apply."

In the instant case the plaintiff did not seek to remove any impediment, cancel any deed or judgment, but asserted an equitable title or interest in the land to the extent that his stock had paid for it. It is well settled in this state that an equitable title will support an action in trespass to try title. We think that the instant case can almost be summed up and the rule announced in practically the same language as that used in Bell County v Felts (Tex. Civ. App.) 120 S. W. 1065, by Judge Fisher, as follows:

"This is not a case, like those referred to, where the purpose was to cancel or remove the legal title as an impediment to the right of the plaintiff to recover, but it is an action for the recovery of the land in controversy, based really upon a right growing out of a title asserted by the defendant. In this case the defendant is asserting the legal title to the property in controversy under a deed executed to him by the sheriff of Bell county. The plaintiff is not repudiating that deed, but it is merely seeking to subordinate the legal title therein conveyed to the defendant to the superior equitable title it holds on account of the fiduciary relationship existing between the two, and the circumstances under which the land was purchased and paid for."

It is true that the Felts Case was reversed by the Supreme Court (103 Tex. 616, 132 S. W. 123), but on another question, and the holding of Judge Fisher on the point discussed has been subsequently cited with approval in the case of Home Investment Co. v. Strange, 109 Tex. 342, 195 S. W. 849, 204 S. W. 314, 207 S. W. 307. Clearly we think the 4-year statute of limitation had no application in this case.

This brings us then to the question of the 5-year statute of limitation. We think no discussion necessary on this point. As stated above, if limitation can apply at all, it could not have begun to run in favor of appellant before the recording of his sheriff's deed. This deed is not shown in the record. It could not have been executed prior to August 6, 1912, and this suit was filed March 14, 1917, hence it is apparent that the 5-year statute cannot apply.

[5] The above conclusion disposes of the issues of limitation as raised by appellant, but there is another reason why appellant's pleas of limitation cannot be sustained. Appellant admits that when he took title to these lands from the Haynies in 1909 he held the interest paid for by appellee's stock in trust for him. In addition he paid some cash, and assumed an outstanding indebtedness of $1,150. This debt then became his personal obligation, and, together with the cash he paid, represented his $1,775 interest in these lands. The respective interests of appellant and appellee in the lands were then definitely fixed. It is true that the Haynies sued to rescind the trade on the ground that the stock was worthless, and, had they been successful, a different case would be presented. Appellant's agreement with them for a compromise whereby all parties were to be placed in statu quo has no bearing on this case, because it was never carried out, and, when judgment was entered against the Haynies on June 8, 1912, the same result obtained so far as appellant's and appellee's relative interests were concerned, as if no suit had ever been filed by the Haynies. There remained then the outstanding debt and lien on the lands, on which the intervener had sued, payment of which had been assumed by appellant individually. Had he then paid off that debt as he was obligated to do, the intervener's suit would have been dismissed, and the entire situation would have reverted to the same status which obtained when the lands were first conveyed by the Haynies to J. G. Burney. But he left the intervener's suit go to a judgment, and then bought in the land by paying off the judgment against himself. If an innocent third party had bought the land at this foreclosure sale, an entirely different situation would have arisen. But appellant never paid anything but the debt he had originally assumed against the land, knew, as he admitted on the trial, that appellee still had the interest in the land which was paid for by his stock, and that he, appellant, held this interest in trust for appellee at the time he took the sheriff's deed. Certainly we think that to permit appellant through such a procedure as he followed in this case, without any actual knowledge of it at the time by appellee, to now assert an adverse title to the lands against his beneficiary would be tantamount to giving judicial sanction to a fraud. In other words, we are of the opinion the same trust which was created when appellant first took title to these lands in his own name, so far as J. G. Burney is concerned, continued uninterrupted through all these proceedings.

[6] It is the well-settled law in this state that no limitation will begin to run in favor of a trustee against his beneficiary until the trust is clearly and unequivocally repudiated and notice of such repudiation given the beneficiary. Union Trust Co. v. Harbaugh (Tex. Civ. App.) 205 S. W. 500; Cooper v. Lee, 75 Tex. 114, 12 S. W. 483; Pearce v. Dyess, 45 Tex. Civ. App. 406, 101 S. W. 550; Home Investment Co. v. Strange, 109 Tex. 348, 195 S. W. 849, 204 S. W. 314, 207 S. W. 307; Cavitt v. Gulledge (Tex. Civ. App.) 255 S. W. 784. The jury found that appellant had misled and deceived appellee with the intent of depriving him of his property. Appellee testified, in effect, that he had no grounds to believe otherwise than that he had lost his stock until July, 1915, and that an investigation some time in 1916 disclosed the facts. No notice of a repudiation, if any was ever given, came

to appellee then prior to July, 1915. Though appellant pleaded adverse possession and limitation, we doubt seriously if his own testimony on the trial will support any such plea or authorize any conclusion that he ever repudiated his trust at all. We quote from his testimony on cross-examination the following:

"As to whether, after having paid $1,502.70 at the sheriff's sale, I then claimed to own all the property I have regarded Capt. W. D. C. Burney as still having an interest in it; it has always stood in the same attitude. So far as the title is concerned, it has always stood in my name. I always claimed he had an equity in it if there is anything more than what I have been out to keep it."

[7] But, regardless of that, the fiduciary relationship existing between him and his aged uncle, the fact that he lived in Austin, was an officer in the Union Trust Company, and solicited the stock in question from his uncle, who lived in another county, and who trusted his nephew entirely in handling the matter for him, made it his duty to act in the utmost good faith in the matter. Because of these facts the appellee had a right to rely upon appellant, and his delay in taking action in the matter did not, under the circumstances, constitute a lack of diligence in discovering the fraud that would start the statute of limitations to running against him. Limitation will not run in cases of fraud until the fraud is discovered, or by the use of reasonable diligence should have been discovered. Shuttleworth v. McGee, 47 Tex. Civ. App. 604, 105 S. W. 823; Ash v. A. B. Frank Co. (Tex. Civ. App.) 142 S. W. 42; Thomason v. Rogers (Tex. Civ. App.) 155 S. W. 1040.

[8] Appellant's third, fourth, fifth, sixth, and seventh propositions relate to the findings of the jury to questions Nos. 1, 3, 4, 6, and 7, respectively, asserting that all of said answers are contrary to the evidence. We have read carefully all the evidence, and find no merit in appellant's contention. It is not necessary to discuss these propositions separately. The record discloses a conflict in the testimony of appellant and appellee, who were the principal witnesses, on the issues raised, and the jury found in favor of appellee. That was their prerogative and sphere, and this court has repeatedly held that in such cases their findings will not be disturbed, unless so against the overwhelming preponderance of the evidence as to show prejudice.

The eighth proposition of appellant asserts error in trial court in refusing to instruct a verdict in his favor. There was no error in this, and discussion of it is unnecessary.

Finding no error, the judgment of the trial court is affirmed.