CHICAGO, R. I. & G. RY. CO. v. DUNCAN. (No. 9372.)

(Court of Civil Appeals of Texas. Dallas. April 25, 1925. Rehearing Denied June 6, 1925.)

1. Action ⊗⟹27(1)—Action ex contractu or ex delicto for breach of contract optional in some cases.

Though, in majority of actions arising from breach of contract, an action ex delicto only is available, there are contracts for breach of which an action ex contractu or action ex delicto may be brought, at option of injured party.

2. Action ⊗⟹27(2)—Abstractor's negligent failure in preparing abstract held to give rise to action for tort as well as for breach of contract.

The negligent failure, on part of abstractor, to include in abstract an omitted deed, which caused his employer to sustain damage, was a tort as well as a breach of contract, and employer had choice of either action.

3. Abstracts of title ⊗⟹3—False representations in abstract, though made in good faith, nevertheless legal fraud rendering abstractor liable.

An abstractor is bound to know the facts, and in law misrepresentations in abstract, though made in good faith, are nevertheless a legal fraud, rendering him liable therefor to his employer.

**4. Limitation of actions ☞100(11)—Lack of diligence in discovering fraud in abstract starting statute running held not shown.**

Where abstract was valid on its face, and title shown thereby was free from suspicion, and fraudulent representation in abstract, which omitted a deed therefrom, was not discovered until after filing of suit by parties holding under such omitted deed, *held* that failure to bring action for such fraud prior thereto did not constitute lack of diligence in discovering fraud that would start statute of limitations running against it.

**5. Abstracts of title ☞3—Giving of fraudulent abstract and not abstract itself constitutes negligence rendering abstractor liable.**

Where abstract contained fraudulent misrepresentation, in that certain deed was omitted, the "giving" of certificate, and not certificate itself, constituted the negligence for which abstractor became liable.

**6. Limitation of actions ☞100(1) — Fraud stops running of statute until discovered or should have been discovered.**

Fraud stops running of statute of limitations until fraud is discovered, or by use of reasonable diligence should have been discovered.

**7. Pleading ☞214(1)—Allegations in petition accepted as true on demurrer.**

On demurrer, allegations in plaintiff's petition must be accepted as true.

**8. Limitation of actions ☞39(1)—Four-year statute held applicable to action against abstractor for fraud in preparing abstract.**

Four-year statute of limitation (Vernon's Sayles' Ann. Civ. St. 1914, art. 5690) *held* applicable to action against abstractor for fraud in preparing abstract, where ordinary diligence was exercised in discovering fraud.

**9. Executors and administrators ☞429 — Action against executrix individually limited to enforce lien on property of estate coming into her hands.**

In action against defendant as independent executrix of an estate, plaintiff's action is limited to enforce lien on property of testator that came into executrix's hands.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the Chicago, Rock Island & Gulf Railway Company against Josephine Duncan, individually and as independent executrix of the will and estate of S. W. S. Duncan, deceased. Judgment of dismissal, and plaintiff appeals. Reversed and remanded.

Lassiter & Harrison, of Fort Worth, and Phillips, Townsend & Phillips, and Tom Scurry, all of Dallas, for appellant.

D. A. Eldridge, of Dallas, for appellee.

VAUGHAN, J. Appellant caused this suit to be instituted against appellee individually and as independent executrix of the will and estate of S. W. S. Duncan, deceased, to recover damages alleged to have been sustained by appellant on account of appellee's testator selling and delivering to appellant, on the 26th day of August, 1902, an incomplete abstract of title to a certain tract of land, accompanied by false certificate. In brief, appellant alleges that in the month of August, 1902, it applied to appellee's testator, who was then engaged in making abstracts of title to lands located in Dallas county, Tex., for a full and complete abstract of title to a certain tract of land located in said county, and that said testator thereafter prepared, made, and certified an abstract of title to said tract of land, for which he charged and appellant paid him the sum of $14.40, and that, relying on the truth and correctness of the certificate and abstract, appellant purchased the land, and that thereafter, on or about the 9th day of February, 1916, appellant discovered, for the first time, that there had been omitted from said abstract, through the negligence of said testator in compiling same, a deed executed on the 9th day of February, 1883, by appellant's grantor and her deceased husband, conveying the title to said property to their children, Louise and Eugenia Cretien, except a life estate reserved by the grantor; that said abstract failed to show these facts; that the certificate of said abstract was false and untrue, and that it failed to disclose this outstanding deed, which was then of record in the deed records of Dallas county, and that appellant suffered damage in the sum of $3,500, being the price paid by it to Augustine Cretien for said property, as appellant had to and did pay to said prior grantees the sum of $8,500 in order to acquire the fee-simple title to said property, the same being vested by said prior conveyance in said Eugenia and Louise Cretien.

Appellant further alleged that S. W. S. Duncan died on or about October 26, 1916, leaving a will which was duly probated, by which he devised and bequeathed his entire estate, of the value of $75,000, to appellee, making her in the will independent executrix; that appellee was appointed and confirmed by the court as independent executrix, and duly qualified and took possession of the property, and, at the time of the institution of appellant's suit, was still in possession of all of the property of the estate of S. W. S. Duncan, deceased.

We do not deem it necessary to extend the statement further from the pleadings, as a discussion of the propositions will sufficiently develop the case.

Appellee, by her answer, excepted to appellant's petition on the following grounds: (1) To so much as sought a judgment against her individually; (2) that appellant's petition showed upon its face that its cause of action was barred by the 2-year statute of

limitations; and (3) that said petition showed on its face that appellant's cause of action was barred by the 4-year statute of limitation; and, in addition, set up numerous other facts not necessary to a disposition of this appeal, therefore same will be omitted.

The cause was heard on the above exceptions April 23, 1924, same being sustained by the court; and, appellant refusing to amend, judgment was entered dismissing the suit. From this judgment appellant duly prosecuted its appeal, and, by appropriate propositions, questions the validity of the proceedings terminating in said judgment. Appellee contended in the court below, and now here contends, that an action for fraud cannot be properly maintained upon this state of facts, in that appellant's action is contractual and cannot be otherwise. On this contention, the trial court sustained appellee's second and third special exceptions presenting the statute of limitations of 2 and 4 years. This contention extends to the very foundation of appellant's cause of action, for, if correct, the judgment entered by the court is proper; otherwise should be reversed, and the cause remanded.

Appellant's cause of action is based upon what it alleges to be a fraud perpetrated upon it by appellee's testator, growing out of the breach of the contract; and appellee contends that for the breach an action ex contractu was only available to appellant.

[1] That such rule governs the majority of actions arising from the breach of a contract is undoubtedly true, but it is equally true that there are contracts for the breach of which an action ex contractu, or an action ex delicto, may be brought at the option of the injured party. This is recognized in Addison on Torts, p. 17, to wit:

"A tort may be dependent upon or independent of a contract. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded on the contract, so that an action ex contractu for the breach of a contract or an action ex delicto for the breach of duty, may be brought, at the option of the plaintiff."

That appellee's testator entered into a contract, for the breach of which an action ex contractu would lie, is not controverted; it being contended by appellee that when the abstract was delivered August 26, 1902, in the defective condition as alleged by appellant, there immediately arose against testator a cause of action only for the damage then sustained from the failure to make and furnish a complete abstract as per contract, against which the statute of limitations was then put in motion; and, although the breach of the contract remained undiscovered, and the injury resulting therefrom as alleged was not in fact suffered until after the expiration of the period of time completing the bar of the statute of limitations, appellant

was precluded by such bar of the statute from recovering the damage alleged to have been sustained.

[2] The making of the contract involved was accompanied with a common-law duty to perform the work agreed to be done, to wit, the making of the abstract with skill, reasonable expedience, and faithfulness, and the negligent failure on the part of appellee's testator to include in the abstract made by him the omitted deed which caused appellant to sustain damage, as alleged, was a tort as well as a breach of the contract. The injury resulting from the careless and unskillful preparation of the abstract made available to appellant the action instituted, notwithstanding the breach of the contract which gave rise to the tort was also ground for an action ex contractu, appellant having the right to select from the remedies available the form of action through which it would seek redress. Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N. E. 503, 12 L. R. A. (N. S.) 924; Hundley v. Louisville & N. R. Co., 105 Ky. 162, 48 S. W. 429, 63 L. R. A. 289, 88 Am. St. Rep. 298.

That appellant had a cause of action against appellee's testator for his breach of the contract in negligently preparing the abstract, whereby he violated his express agreement to carefully prepare and furnish a complete abstract, will not exclude all other remedies for the wrong done. It is true the law permits but one recovery for a wrong, but the means of effecting that recovery is not limited by the law to one channel, to wit, a suit for breach of contract. Appellee's testator undertook, under his agreement with appellant, to search the county records of Dallas county for all instruments of record affecting the title to the property which appellant contemplated buying when the abstract was ordered, and appellant suffered nominal damages on account of the negligent manner in which said Duncan performed the work. However, appellant's real injury or grievance rests, not so much in the act of negligence, as in the positive, express, and also implied statement and representations of said testator that he had not been negligent, but, on the contrary, had been diligent and careful, and was delivering to appellant a complete abstract of title, one that embraced all instruments of record pertaining to or affecting the title to the property in question. The statement in the certificate made by said testator being, in effect, a statement that there were no conveyances or incumbrances affecting the title to said property of record other than those embraced in said abstract. Thompson's Title to Real Property, § 20.

[3] It was upon this false representation that appellant relied, acted, and sustained its damage. The obligation to make a true search and a correct examination, it is true, arose only because of the contract, but it

thereupon became no less a legal duty, not only to represent the true facts in the abstract as prepared, but in the certificate thereto as well, and the falsity of the representations made by the abstract and certificate, although not intended to be false in any respect, was no less a legal fraud.

It is conceded by appellant, in which we cheerfully join, that appellee's testator, S. W. S. Duncan, acted in good faith in certifying to the false certificate, and believed, no doubt, that it was true; but this does not lessen the appellee's liability, in her representative capacity, for the fraud alleged against her testator. This, because good faith and belief in the truth of a representation, while relieving testator from the charge of having engaged in conduct involving moral turpitude, will not affect the legal fraudulent nature of the representations, nor decrease the damage sustained by the appellant, because appellee's testator, by accepting the employment to prepare the abstract, became obligated and in duty bound to know the facts, and in law his misrepresentation in reference thereto was equally actionable as if same had been maliciously made. Zarvala Land & Water Co. v. Tolbert (Tex. Civ. App.) 184 S. W. 523; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Ford v. Sims (Tex. Civ. App.) 190 S. W. 1165.

[4] The motive that actuated appellant to seek the services of appellee's testator to make an abstract of the title to the property it contemplated buying, which motive we must assume, from the position of the parties, was known equally as well to said testator, was to secure said testator as an efficient, expert, and experienced person in matters of that kind, to examine the records of Dallas county in an efficient, thorough, and dependable manner, and thereby avoid any other examination of the records by any one connected with and acting for appellant, or otherwise. Therefore it was not incumbent upon appellant to check up the records of Dallas county to see whether or not the abstract compiled therefrom by testator was a full and complete abstract, containing all of the muniments of title or other documents of record pertaining to or affecting the title to the property which appellant contemplated purchasing, and the fact that appellant did not so check up the records, does not indicate that it did not act with due prudence; the abstract not showing on its face that it was defective, for, if it had, prudence and circumstances would have required further investigation. Buchanan v. Burnett, supra. However, under appellant's allegations, the title shown by the abstract was free from suspicion, revealing a good and sufficient •legal title in appellant's vendor.

The omitted instrument was a deed from appellant's vendor and her deceased husband

to their children, conveying to them the title, the grantors reserving a life estate. No question arose involving the validity of the title or the accuracy of the abstract or falsity of the certificate thereto; and no suspicious circumstances suggested that appellant had not secured good and sufficient legal title through the deed executed by its vendor, until the death of its vendor and the filing of the suit by her children in 1916. On this state of facts it must be held that appellant exercised due diligence in accepting and acting upon the abstract prepared by appellee's testator without making further investigation (Thompson's Title to Real Property, § 11), and, in doing so, exercised the care that an ordinarily prudent person would have exercised under the same or similar circumstances; and appellant's delay in taking action did not constitute a lack of diligence in discovering the fraud that would start the statute of limitations to running against it (Burney v. Burney [Tex. Civ. App.] 261 S. W. 182). .

To sustain appellee's contention would, in our opinion, be but to make "as sounding brass or a tinkling cymbal" that wise, protective, and familiar maxim of the law, "Ubi jus ibi remedium,". which, through sane and reasonable application from a period beginning almost with the birth of the common law, has not only enabled courts to hear and determine wrongs alleged to have been committed, but, in doing so, to find a way to grant full and complete redress, that it should not be said that the law is powerless, as administered through its courts, to accomplish its mission, namely, furnish a redress for every wrong.

When the abstract was received by appellant, the fact that same had not been prepared in accordance with the contract was not disclosed within its compilation, but, to the contrary, on its face it bore the evidence of good faith. It reflected not the slightest suspicion that it was not all that it purported to be, namely, a complete presentation of all muniments of title and other instruments of record affecting the title to the property abstracted; and, in addition to this, its accompanying certificate was not only an assurance that the work had been performed with skillful accuracy, care, and thoroughness, but that the abstract, as delivered, faithfully reproduced the results of such labor. That the contract for the abstract had been breached through the defective preparation of same, as alleged by appellant, was not known to appellant at the time the abstract was received, there being nothing within its contents to indicate in the remotest degree the existence of such defect, but, to the contrary, not only was such defect concealed, but, by the very terms of the abstract and its certificate, appellant could only have been reassured that its confidence

in the ability, accuracy, thoroughness, and dependability of the abstractor had been justified. When the abstract was delivered in its defective condition, the contract that was made when the order was given and accepted for it was breached, which gave rise to a cause of action for the damage sustained up to that time, viz. the cost of the abstract, which amount only could have been recovered, no other damage having accrued. This condition continued until appellant, accepting the title as disclosed by said abstract and acting thereon, purchased the property, to do which appellant was induced through the concealment of the fraud alleged, without the existence of which—that is, the fraud in its concealed or hidden state from the time the abstract was delivered until the sustaining of the damage by appellant as alleged—such injury would and could not have resulted. Therefore it was the concealment, through said false abstract and certificate, of the fact that appellant's grantor did not have, and therefore could not convey to appellant, a good and sufficient legal title to the property, that induced appellant to buy, and the continuing concealment of the true facts by said false certificate that prevented appellant from discovering such facts before it purchased the property and concealed from it that the real legal title was vested in said prior grantees until they had filed suit to recover the property. The filing of that suit not only revealed to appellant the fraud alleged to have been committed against it, but produced almost simultaneously the damage sought to be recovered in this suit.

So far as we have been advised or are able to ascertain, the exact pivotal question presented by this appeal has never been decided in this state. However, we have examined with much interest decisions by courts of other states, some passing directly and others only incidentally, upon the question. In effect, it is held in the cases of Wacek v. Frink, 51 Minn. 282, 53 N. W. 633, 38 Am. St. Rep. 502, Dickle v. Abstract Co., 89 Tenn. 431, 14 S. W. 896, 24 Am. St. Rep. 616, that the contract made by an abstractor when he receives a fee and examines a title is not one of indemnity, but a contract that he will faithfully and skillfully do the work he contracts to do, and this contract is broken as soon as he, through negligence or ignorance of his business, delivers a false abstract of title. In the case of Lattin v. Gillette, 95 Cal. 317, 30 P. 545, 29 Am. St. Rep. 115, involving almost a similar state of facts as the instant case, it is held:

"The obligation assumed by the defendants arose out of their agreement that they would examine the title of the property, and ascertain if the same was good in Birnbaum, and report the same to the plaintiff."

"Whether the negligence out of which the cause of action arises is the breach of an im-

plied contract, or the affirmative disregard of some positive duty, is immaterial. In either case, the liability arises immediately upon such breach of contract or disregard of duty, and an action to recover the damages which are the measure of such liability may be immediately maintained. The right to maintain the action is distinguished from the measure of damages, and although the entire damage resulting from such negligence may not have been sustained, or the fact that the negligence occurred may not have been known until the right to a recovery is barred, yet the time within which an action may be brought is not thereby prolonged."

In that case, the complaint alleged:

"They 'negligently and unskillfully conducted such examination, and did not truthfully report the condition of the title to the plaintiff'"

—while in this case, the word "fraudulently" is used. In that case, the breach of defendants' agreement, by which they became liable, is alleged to have been that they "negligently and unskillfully conducted such examination, and did not truthfully report the condition of the title to the plaintiff," but reported on the 21st day of June, 1886, that the title was vested in Birnbaum, free of all incumbrances; whereas, in fact, at the date of the certificate, he was the owner of only an undivided one-half thereof, and the same appeared of record on the public records of said county. The court held that the giving of this certificate was a breach of defendants' agreement, and constituted the negligence for which they became liable.

[5] We have most carefully considered this case, and have reached the conclusion that the result was made to depend on the effect given by the court to said certificate. We are unable to accept the logic of the learned judge who rendered the opinion for the court. In our opinion, the logical situation is that the "giving" of the certificate was the means by which the fraud was perpetrated, in that the breach of the agreement to examine the title of one Birnbaum by searching the public records was concealed, and the plaintiff induced thereby to accept and act upon the report of the defendants as constituting a full and complete compliance with the contract. Therefore the certificate did not constitute the negligence for which the defendants became liable, as same was not a part of the work to be performed in the examination of title, but was the fraudulent means by which the defendants concealed from the plaintiff their negligence in the performance of the services contracted for; the certificate being the fraudulent means of concealing the negligence, but not the negligence itself, or the breach of the contract produced by such negligence.

The case of Russell v. Polk County Co., 87 Iowa, 233, 54 N. W. 212, 43 Am. St. Rep. 381, cited and relied upon by appellee as sustaining her contention that the facts alleg-

ed by appellant only gave rise to an action ex contractu, is a leading authority upon the liability of abstractors, and perhaps has been more frequently cited than any other. In that case, the plaintiff sued for damages on account of an error in an abstract furnished by the defendant, and the court specifically excepted the issue now before this court from its decision, as follows:

"The statute of limitations commences to run from the time a cause of action accrues. Code, § 2529. By section 2530 it is provided that in actions for relief on the ground of fraud or mistake the cause shall not be deemed to have accrued until the fraud or mistake has been discovered. The petition is without allegations to bring the case within the provisions of the latter section, and, hence, we are to inquire when the cause of action accrued without reference to its being grounded on fraud or mistake."

From the above, it is clear that the court eliminated from its decision the right of plaintiff to recover on the ground of fraud; the petition not containing the allegations of fraud essential to bring it within the provisions of said section 2530.

To the same effect is the holding in the case of Owen v. Western Savings Bank, 97 Pa. 47, 39 Am. Rep. 795 (a similar case to that of Russell v. Polk), namely:

"As fraud is not charged against the defendant, the case is not complicated by that element, and the action is founded on negligence alone."

The Supreme Court of Idaho in the case of Hillock v. Idaho Title & Trust Co., 22 Idaho, 440, 126 P. 612, 42 L. R. A. (N. S.) 178, passed upon a state of facts identical with those of the instant case. In that case, the plaintiff brought his suit, basing it upon the fraudulent representation of the defendant in its abstract and certificate, alleging that the representations were false because the abstract was not complete; a tax deed being omitted therefrom. The defendant demurred to the complaint upon the ground that the action was not contractual, and set up the statute of limitations applicable to suits on contracts. This opinion represents such a careful and extended examination of the authorities bearing upon the question, and the conclusion reached being so in harmony with the principles of exact justice—the philosophy of the law—that we quote therefrom, not only as applicable to, but as properly disposing of, the question of prime importance presented for our determination, namely:

"It seems to us, however, that the authorities dealing with the specific question of the furnishing of a false certificate of abstract fall somewhat short of the real and vital question involved in these transactions. The contract in fact is only partially made when a man applies to an abstract company for an abstract of title to a certain tract of land. The contract is not then consummated. It simply amounts to an application to purchase an abstract of title covering all instruments and conveyances and incumbrances affecting the title to the property or all such instruments and records affecting the title in some given particular, as, for instance, incumbrances, tax titles, or judgment liens, or mechanic's and laboring men's liens. On the other hand, the extent of the representation and liability of the abstract company is measured by the statements contained in the abstract and the terms of the certificate accompanying the same. The certificate annexed thereto may be of such a nature that it would attach little or no liability to the abstract company and be of as little use to the one who applied for it, and would not meet the requirements and terms of the application made to the company to purchase an abstract of title to the specific piece of property. In any event, the abstract and certificate furnished the unmistakable evidence of the representations made by the abstract company and of its part of the contract. If those representations are untrue, whether they be caused by mistake or actual fraud, it amounts in law to a fraud upon the purchaser of the abstract; and, if he suffers damage in consequence thereof, it seems to us he would have his action for false or fraudulent misrepresentation as to the character of the property the company sold him when it sold him such an abstract, and as to the condition and nature of the title to the property abstracted. * * *

"We fail, therefore, to see how any cause of action accrued to them upon the mere delivery to them of the abstract and certificate. When, however, they acted upon the representations contained in this abstract and purchased the property described therein, relying upon the abstract, a cause of action accrued to them as soon as they learned of the mistake and consequent misrepresentations made thereby. It seems to us, therefore, that no cause of action accrued until the appellants were called upon to pay some valid claim held against the property and not shown by the abstract, or had notice of the claim and the falsity of the representation. * * *

"A man who buys land on the faith of an abstract furnished by a legally authorized company may have no occasion to examine the county records for years, and although a mortgage omitted from the abstract might not mature for some years after the abstract is made and delivered, and would then not be barred by the statute for five years after maturity, and the purchaser of the abstract and the land therein described might not learn of such mortgage until the commencement of an action to foreclose, still, if the statute runs in favor of the abstractor from the delivery of the abstract, the company would be released long before the falsity of the abstract could reasonably be discovered by the purchaser. This would not be justice, and ought not to be the law."

The decision in the Hillock Case is based upon the Idaho statute to this extent: Subdivision 4, § 4054, Revised Codes of Idaho, provides:

"An action for relief on the ground of fraud or mistake. The cause of action in such case [is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

We have no such statute in Texas. This, however, will not distinguish the Hillock Case, as we have in this state a well-recognized exception to the statute of limitations which is established by adjudicated cases, though not by legislative enactment, yet is just as effectual. This exception is stated in Burney v. Burney, supra, as follows:

"Limitation will not run in cases of fraud until the fraud is discovered, or by the use of reasonable diligence should have been discovered."

[6] To the same effect is the holding in the case of Ransome v. Bearden, 50 Tex. 127. It is therefore unquestionably the established law of this state that fraud stops the running of the statute of limitations until the fraud is discovered, or by the use of reasonable diligence should have been discovered.

[7] Appellant alleged in its petition that it did not discover the fraud of appellee's testator until after the filing of the suit by the parties holding under the deed omitted from the abstract, which suit was filed in February, 1916. This allegation of the appellant on demurrer must be accepted as true. Then the question arises, Did appellant exercise ordinary diligence in discovering the fraud, and would the exercise of ordinary diligence have revealed the fraud earlier than it was revealed? Did not the existence of the relationship of abstractor and employer, and the representations of the testator in that capacity as an expert examiner and compiler of land records, discourage and actually prevent his employer the appellant, from making investigation beyond the examination of the abstract? We think so. Burney v. Burney, supra.

[8] The 4 years' statute of limitations is applicable, and appellant's cause of action on the question of limitations must be ruled thereby. Article 5690, V. S. T. C. S. 1914; McCord v. Nabours, 101 Tex. 494, 109 S. W. 913, 111 S. W. 144; Texas & Pacific Ry. Co. v. Jowers (Tex. Civ. App.) 110 S. W. 946. It is therefore our conclusion that the trial court erred in sustaining appellant's second and third special exceptions, and in dismissing appellant's cause of action against appellee as independant executrix of the will and estate of S. W. S. Duncan, deceased.

[9] The action of the court in sustaining appellee's first special exception, to so much of appellant's petition as sought judgment against appellee individually, is practically conceded by appellant as being correct. Therefore we will not discuss that feature of the case further than to say the sustaining of this exception is in accordance with the holding of a similar state of facts in the case of Blinn v. McDonald, 92 Tex. 604,

46 S. W. 787, 48 S. W. 571, 50 S. W. 931, viz. on the ground that appellant's cause of action against appellee individually was limited to enforce a lien on the property of testator that came into appellee's hands, and therefore the petition should have alleged what specific property of testator came into her hands, and should have sought only the enforcement of the lien thereon to secure the payment of the claim that should be established as a moneyed obligation against the estate of testator, and not for the recovery of a personal judgment against appellee.

The conclusions reached, as indicated by the discussion of the questions presented, require that the judgment of the court below be reversed, and cause remanded, for further proceedings not inconsistent with this opinion, and it is so ordered.

Reversed and remanded.